STATE *ex rel.* DR. GEORGE A. MUNCH v. DR. J. C. DAVIS, President of the State Board of Medical Examiners, *et al.*

196 So. 491
Division B
Opinion Filed May 28, 1940

*Bryan & Bryan,* for Relator;

*John W. Prunty,* for Respondents.

CHAPMAN, J.—On petition of Dr. George A. Munch an alternative writ of mandamus issued by this Court directed to the State Board of Medical Examiners, commanding said Board to restore the name of relator George A. Munch to the roll as a legally licensed physician and surgeon in the State of Florida and to reinstate his name and to vacate an order previously made by said Board revoking the license of the relator to practice medicine in Florida.

The alternative writ further alleged that on June 16, 1930, the Board of Medical Examiners, at Lakeland, Florida, without notice, without having served a summons on him, without any proper basis for charges against him, and without opportunity to be heard or answer certain alleged charges, made and entered an order revoking relator's license to practice medicine in Florida.

The return of the Board of Medical Examiners to the alternative writ of mandamus in effect denied that the order made by the Board to revoke the license of the relator was without notice, but states that summons or notice was served upon him and the relator had full opportunity to appear, answer and refute the charges prior to the entry of the order on June 16, 1930.

Attached to the return is a photostatic copy of summons dated May 30, 1930, requiring relator to appear at the Thelma Hotel, Lakeland, Polk County, Florida, on June

16, 1930, and show cause why the license to practice medicine should not be revoked.

The charge preferred by the Board against the relator was that George A. Munch was convicted in the Federal Courts of the United States at Tampa, of a felony, to-wit: using the United States mail to defraud, having sold bogus diplomas and license through the United States mail contrary to law. The relator was confined to the Federal Prison in Atlanta and was serving a sentence when notice to appear and copy of information was sent through the United States mail addressed to the relator at Atlanta, Georgia, and the said George A. Munch signed a receipt for such notice on May 31, 1930, and the certificate of delivery by the Warden is, viz.:

"I certify that the record as shown by this photostatic copy is a record of registered mail received in the United States Penitentiary, and that I am the keeper of such record.

"The record shows the receipt of a registered letter, Post Office No. 55978, as evidenced by the signature of prisoner George A. Munch, Reg. No. 33312, United States Penitentiary, said letter being received at this institution June 2, 1930.

"(s)  Joseph W. Sanford

"JOSEPH  W. SANFORD,

"Warden."

The return further shows that the registered letter Post Office No. 55978 was receipted for and acknowledged on June 2, 1930, at the United States Penitentiary at Atlanta, Georgia, by George A. Munch, whose regulation number was 33312, and that the aforesaid registered letter contained a copy of the summons issued by the Board requiring the relator to appear at Lakeland, Florida, on June 16, 1930,

together with a copy of the charge or information against the relator as preferred by the Board.

It is contended by the relator that the registered letter containing a copy of the charges preferred and the notice of the hearing to be held at Lakeland, Florida, on June 16, 1930, and received by the relator at the Federal Prison at Atlanta when a prisoner on June 2, 1930, was not due process of law within the meaning of the State and Federal Constitutions.

In the case of State *ex rel.* Tullidge v. Hollingsworth, 108 Fla. 607, 146 So. 660, this Court when considering the notice as provided for by Subsection (i) of Section 3415 C. G. L., said:

"We do not hold that legal services on the accused cannot be made by registered mail or that the accused can ignore or run away from such service with impunity, but we do hold that the Board has no right to proceed to the examination of a cause till it has positive proof that service was made on the accused and reasonable time must be given to employ counsel and prepare his defense. Failure to observe any of these requirements and to leave the accused in position to have his case reviewed by the courts is a violation of the plain mandate of the law."

See State *ex rel.* Tullidge v. Hollingsworth, 103 Fla. 801, 138 So. 372.

It will be observed that Subsection (i) of Section 3415 C. G. L. provides that when charges are filed, a time and place for the hearing of said charges shall be fixed by the Board and a copy of the charges, together with a notice of the time and place when they will be heard and determined shall be served upon the accused at least ten days before the date actually fixed for the hearing. The date of the hearing in the case at bar was June 16, 1930, at the

Thelma Hotel in Lakeland, Florida, and the notice of the hearing was served upon the relator more than ten days prior to the date of the hearing.

On the question of the sufficiency of the notice 16 C. J. Secundum at page 1256, in part, said:

"The legislature may prescribe what notice shall be given, subject to the condition that the notice prescribed must conform to the requirement of due process of law by affording an opportunity to be heard, and in certain cases the character of notice may rest in the discretion of the court. A method of service, although prescribed by statute, is not sufficient if it does not amount to due process of law; but due process is satisfied by timely and sufficient notice of proceedings with an adequate hearing before a court of competent jurisdiction, and no matter what its character, a notice is sufficient if it actually results in bringing the party into court in due time to protect his interests."

See Western Life Indemnity Co. v. Rupp, 235 U. S. 261, 59 L. Ed. 220, 35 Sup. Ct. 37; 12 C. J. 1230, 1232, 1233; 12 Am. Jur. 289, par. 594.

We therefore hold that there is no merit in the assignment presented.

The relator contends further that his conviction in the Federal Court in Hillsborough County, Florida, during the year 1929 of a felony and a sentence therefor in the Federal Prison for a period of five years was not a conviction of a felony as contemplated by Subsection (b) of Section 3415 C. G. L. as would authorize the Board to revoke, suspend or annul the license to practice medicine under the laws of Florida. One of the exhibits attached to the return discloses that the relator was convicted for using the United States mails to defraud, having sold bogus diplomas

and licenses through the United States mails, and the same is made a felony by a Federal Statute.

The law provides for the annulment or revocation of a physician's license when he has been convicted in a court of competent jurisdiction of a felony. The conviction of a felony for any offense which if committed within the State of Florida would constitute a felony under the laws thereof. See Subsection (b) of Section 3415, C. G. L. The license of the relator to practice medicine in Florida was by him accepted with a full knowledge of the inherent power of the State of Florida to enact laws, promulgate rules and regulations controlling the privilege to practice medicine and likewise that the privilege when extended by the State could or might be by it withdrawn when it became necessary to preserve the public health, morals, comfort, safety and the good order of society. The inherent right of the people through legislative enactment to regullate the privilege of practicing medicine in Florida cannot be questioned. The public welfare is an important factor that cannot be overlooked when the moral and character qualifications of an individual are being considered of those desiring to practice medicine. The Legislature by the enactment of Subsection (b) of Section 3415 C. G. L. retained the right to regulate the moral and character qualifications of physicians practicing in Florida by providing that individuals convicted of any offense amounting to a felony could be suspended from the practice or the license previously issued could be revoked or annulled. The relator in his sworn petition makes it known to the Court that he was convicted of a felony which consisted of selling bogus licenses and using the United States mails in so doing. He was sent to the Federal Prison for a term of five years for said offense. The sale of spurious or fake licenses and

the use of the United States mails in accomplishing the sale was the gravamen of the offense. This crime of offense involved moral turpitude and it reflects on the character qualifications of physicians and falls within the spirit of Subsection (b) of Section 3415 C. G. L. The Legislature intended that physicians convicted of a felony should not practice medicine in Florida and when it was shown that a physician had been convicted of an offense amounting to a felony then he became subject to the provisions of the statute which suspended, revoked or annulled the license to practice previously granted to him by the State through the Board of Medical Examiners. We hold that the conviction of the relator in the Federal Court amounted to a felony under Subsection (b) of Section 3415 C. G. L.

Subsection (i) of Section 3415 C. G. L. provides that after a copy of the charges with a notice of the time and place for hearing said charges shall be served upon the accused advising him of the said hearing * * *, the accused at the hearing shall have the right to cross-examine the witnesses against him, and to produce witnesses in his defense and to appear personally or by counsel. The Board upon satisfactory proof made can adjudge the licentiate to be guilty of the charges and suspend him from the practice of medicine. The record shows that lawful service of the notice and charges were made upon the relator at the time when he was serving a prison sentence in the Federal Prison at Atlanta. The relator was powerless to attend the proposed hearing at the Thelma Hotel at Lakeland, Florida, on June 16, 1930, because of his incarceration. The law contemplates that the accused shall have the right to appear at the hearing, examine documents offered against him, cross examine witnesses offered against him and to produce witnesses in his behalf, and the statute contemplates that he

shall attend the hearing personally or by counsel. The record shows that the relator was not present at the hearing in person or by counsel. The essential elements of due process of law are notice, an opportunity to be heard, and to defend in an orderly proceeding before a tribunal having jurisdiction of the cause. Daniel Webster in his argument in the Dartmouth College case, contended that due process of law meant a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial." See Am. Jur. pp. 267-9, par. 573; 12 C. J. p. 1234, par. 1009.

We do not think that the constitutional rights of the relator were observed at the hearing at Lakeland on June 16, 1930, when an order was made revoking the license of the relator. We do not think the hearing was sufficient to bar or preclude a subsequent proceeding in a constitutional manner on the part of the Board of Medical Examiners to annul, cancel or revoke the registration of George A. Munch to practice medicine in Florida for the offense for which he was convicted in the Federal Courts.

When the order of June 16, 1930, is held void for the reasons hereinbefore stated and is ordered revoked and expunged, then the Relator will stand as he was prior to the entry of that order and the rights of the respondent to proceed under the statute will exist the same as if those former proceedings in which that order was entered had not been instituted.

It is ordered and adjudged that the alternative writ may be amended so that it will require the Respondents to forthwith rescind and revoke the unauthorized and illegal action taken on June 16, 1930, in respect to the revocation of the said license of Dr. George A. Munch. When the alternative writ has been so amended the Respondents shall have fif-

teen (15) days from the filing of said amended command of the alternative writ in which to file answer and return, in default of which peremptory writ of mandamus will be awarded following such amended alternative writ.

It is so ordered.

TERRELL, C. J., WHITFIELD, BROWN and BUFORD, J. J., concur.

THOMAS, J., dissents.