**WOMETCO ENTERPRISES, Inc., et al v. BROWARD COUNTY, at al.**
No. 68-5540.
Circuit Court, Broward County.
February 2, 1971.

Daniel S. Dearing of Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, for petitioners.

Betty Lynn Lee, Assistant County Attorney, for respondents Broward County, Broward County Board of Tax Adjustment, and Director, State Department of Revenue.

Gaylord A. Wood, Jr., Fort Lauderdale, for respondent County Tax Assessor.

William H. Meeks, III, of McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, for respondent County Tax Collector.

STEPHEN R. BOOHER, Circuit Judge.

*Final judgment:* This matter is before the court on final hearing. The issues having been clearly defined, briefed, and argued by counsel for the parties, and the court having carefully examined the record and being otherwise fully advised in the premises, it is ordered and adjudged as follows —

## I.

The court has jurisdiction over the subject matter, specifically granted by statute, §200.10, Florida Statutes (1967). The cause is here on certiorari to review a decision of the Broward County Commission sitting ex officio as a board of equalization for the year 1968. Petitioners alleged serious constitutional problems with the board of equalization proceedings. On either basis there is a sufficient predicate for circuit court certiorari jurisdiction.

## II.

The court has jurisdiction over the parties. This specific question was originally before the court on the motion to dismiss or quash of respondent Broward County Commission, filed September 20, 1968. At a subsequent hearing, this motion was denied on all grounds save one — petitioners' failure to join indispensable parties. In the absence of clear and specific authority in support of this phase of the respondent's motion, the court reserved ruling on that question and, by order entered May 15, 1970, requested briefs and further argument. Briefs-in-main were filed by both parties. A reply brief was submitted by petitioners. Additional oral argument was noticed and heard. After lengthy consideration of authorities and due deliberation over the issues raised and presented by counsel

for the parties, the court concluded that respondent's motion should be denied for the reasons set out in the order of August 3, 1970, extracted below.

1. *Nature of the proceedings.* The instant case is not an original suit in equity challenging an assessment or tax, where the necessary parties defendant are prescribed by statute. See chapter 196, Florida Statutes (1967); §200.40, Florida Statutes (1967). Nor is it, in its broadest terms, an appeal, where the parties who have appeared before a lower tribunal argue the merits of cited error to a higher court. It is, rather, a modified form of appeal, brought to this court under the restricted authority of a statute to review the decision of the Broward County Commission sitting as a board of equalization. §200.10, Florida Statutes (1967). The statute denominates this type of appeal as a certiorari proceeding and limits this court's jurisdiction to a review of the record.

Petitioners alleged no error on the merits of the questions they presented to the board of equalization. Under the posture they have adopted, any such allegation would have been mere surplusage and of no operable effect. Instead, they alleged a serious constitutional defect in the proceedings before the board; they complained that the board failed to afford them due process of law, and they asserted, as a result, that the decision of the board was subject to review. They chose certiorari as the vehicle to challenge that flaw; they rely solely upon the record. The scope of this court's inquiry, therefore, is limited thereto in a certiorari proceeding. To obtain the relief prayed for, the certified transcript of the board of equalization proceedings filed with their petition must show that petitioners were, as a matter of law, denied procedural due process.

2. *Issues raised.* It is axiomatic that the issues to be decided are those raised in the pleadings. Ultimate facts are asserted. In their brief-in-main, filed May 29, 1970, the petitioners' position was clarified. The court agreed with petitioners' position, and decided that the sole issue to be determined was —

> *Whether the Broward County Commissions sitting as a board of equalization for the year 1968 denied petitioners procedural due process by not providing the hearing required by statute.*

3. *Relief.* Jurisdictional relief available from this court is limited by the applicable statute. This court can only review the board's decision by examining the record of the questioned proceedings; it cannot entertain the merits. Nor can it strike all or any portion of the tax levied as a result of the board's affirmance of the assessor's valuation of petitioners' tangible personal property for the year

1968. The horizons of petitioners' relief are narrow. They are limited by the jurisdiction they have invoked. If petitioners' claim is sustained by the record, the most this court can do is to remand with appropriate instructions.

4. *Parties to this determination.* The challenged proceedings were conducted by the board of equalization. It is the action of the board, factually and legally, that gives rise to this cause. Whether or not the board committed constitutional error is the sum and substance of the petitioners' complaint and the issues raised thereby. The question is also instructive as to necessary parties. Neither the tax collector, state comptroller, nor the tax assessor were originally joined as parties respondent. The court concluded, however, that they could in no way add to, detract from, defend, or in any other manner broaden the court's knowledge of the controversy originally raised in this certiorari proceeding. The limitations of the remedy availed of by petitioners disqualified them as direct parties in interest. This court agreed with petitioners that the statutory requirements as to necessary parties defendant to suits in equity challenging the amount of an assessment or tax levied do not apply to certiorari proceedings under §200.10, Florida Statutes (1967). But even if such requirements were intended by the legislature to apply, the distinction between *bringing* suit and *maintaining* suit drawn by the Supreme Court of Florida in McNayr v. Cranbrook Investments, Inc. (1963) 158 So.2d 129, would not preclude their subsequent joinder. The rationale of the *McNayr* case was that amendments to implead nominal parties would be allowed when the basic cause of action was not changed thereby. It was the opinion of this court that the addition of the tax assessor would in no way affect the instant cause, inasmuch as the assessor was not a party whose financial interests would be prejudiced by subsequent joinder, as distinguished from a party whose original omission would adversely affect his property rights or monetary interests. The court determined, therefore, that the tax assessor was subject to joinder upon such terms as the court considered to be just.

Although the court agreed with petitioners that the tax collector, state comptroller and the tax assessor were not necessary parties respondent under the original posture of this case, the court was concerned as to possible due process problems attendant upon failure to join them should more than procedural issues arise. In order to prevent any possible prejudice to them, the court was of the opinion that it could and should join them under the authority of R.C.P. 1.250(c). Accordingly, the court ordered petitioners to file an amended petition, impleading the tax assessor, tax collector, and director of the Florida State Department of Revenue. This was done.

The newly joined parties respondent promptly moved to dismiss or quash the petition on the grounds previously given. These motions were denied for the reasons set out above. The court heard no motion to dismiss the newly-joined respondents. Instead, at a duly noticed final hearing, the parties asked leave to file briefs and to be heard. Petitioners objected on two grounds: firstly, that the newly joined parties respondent could add nothing to a defense of the board proceedings; and, secondly, that time was crucial, since the board of tax adjustment (successor to the 1968 board of equalization) was but a few days short of adjournment and further delay would compel petitioners to wait for relief until the 1971 board convened. If petitioners' complaints were sustained by the record, further delay seemed neither equitable nor just. Accordingly, this court determined, in the interest of protecting its jurisdiction and affording justice, to broaden the scope of its original jurisdiction and to afford all parties the opportunity to be heard on the merits of the assessment itself, as well as the procedural matters originally complained of. See: Zirin v. Charles Pfizer & Co. (1961) 128 So. 2d 594.

## III.

Whether or not petitioners were afforded due process by the board of equalization was the primary issue raised in opposition to the board's original motion to dismiss. Petitioners asserted that the record would show a fatal lack of due process as a matter of law. This assertion secured the court's jurisdiction in face of strong attack.

On careful consideration of the transcript of testimony, certified by the clerk as being correct, it is the opinion of this court that petitioners' assertions are well-founded.

Petitioners submitted independent appraisals of the personal property upon which the challenged assessment had been imposed. These appraisals were ignored by the board of equalization. There is nothing in the record to indicate that the board considered this evidence in any way. To the contrary, there is much in the record which indicates that it paid no attention whatsoever to these proofs. The right to present evidence before an administrative board exercising quasi-judicial powers is an elementary requisite to due process. This implies more. It implies a requirement that such evidence be heard and considered, for the right to present visual evidence to a blind judge, or to argue to a deaf ear, is no right at all.

Petitioners' evidence was as to value. Value was the core of the apple under inquiry. Petitioners' evidence was material and should

have been weighed in the balance of things. To the extent that such evidence was ignored, petitioners were denied a right fundamental to fairness and justice. This maxim should need no more citation than reason, yet there is ample authority. The highest court in the land has treated the question and concluded that due process with respect to administrative hearings requires that the procedure employed be consistent with the essentials of a fair trial. The hearing must be full and fair. There must be an opportunity to offer evidence before an impartial officer, board, or body free of bias, hostility, and pre-judgment. Wong Yang Sung v. McGrath (1950) 399 U.S. 33, 94 L.Ed. 616, 70 S.Ct. 445. Refusal of an administrative body to receive *and consider* competent and material evidence offered by a party to the proceeding amounts to a denial of due process. NLRB v. Burns (8th Cir. 1953) 207 F.2d 434.

The record shows that petitioners attempted to present and argue their proofs as to fair market value. It also shows that these attempts were unavailing. The board seemed to equate such inquiry with assessment. It adamantly refused to consider questions as to value, referring petitioners back to the assessor. In so doing, the board denied petitioners due process. It also demonstrated a misunderstanding of the board's function.

Assessment for ad valorem tax purposes is not an act, it is a process. The term "assessment" comprehends a succession of acts, from return of the property value by the taxpayer to final certification of the tax roll. This is not a novel concept. It is almost as old as the century. See: Jackson Lumber Co. v. McCrimmon (ND Fla. 1908) 164 Fed. 759.

It is true that the tax assessor is vested by law with authority to initially fix values by applying his best judgment within the restrictions of law, but that is not the only authority granted by statute to participants in the assessment process. The board of equalization was vested by law with power and authority to determine values as well. See: Dick v. State ex rel. Harris (Fla. 2d Dist. 1963) 153 So. 2d 844; Sanders v. Crapps (1950) 45 So.2d 484; City of Tampa v. Palmer (1925) 89 Fla. 514, 105 So. 115. The length to which a board of equalization may go in measuring the validity and accuracy of value ascribed to property by the assessor is described in Hoffman v. Land (1951) 55 So.2d 806. In view of what has been judicially sanctioned as the right and duty of a board of equalization, it is difficult to reconcile any concept of fundamental fairness with the board's refusal to consider petitioners' evidence on the ground that its sole authority was to "equalize" and that it could not "assess." See: Stiles v. Brown (1966) 182 So.2d 612; Sparkman v. State

(1916) 71 Fla. 210, 71 So. 34. The board's action—or nonaction—was not consistent with the basic necessities of due process. Petitioners' assertion that the record demonstrates this flaw is well-taken. The flaw is clearly reflected in the record, and the flaw is fatal both under the broad authority of case law and the specific authority of statute. The applicable statutes provided specifically for stated meetings of the county commissioners sitting as a board of equalization, and for hearings. §193.25, Florida Statutes (1967). They also required the board to equalize assessments, i.e., correct, adjust, raise, lower, determine true value. §193.27, Florida Statutes (1967); Stiles v. Brown, supra. If these sections are not substantially complied with, the taxpayer is not bound by any action taken. Sparkman v. State, supra.

Petitioners were entitled to an orderly hearing before a tribunal of competent jurisdiction. When the tribunal refused to grant the relief to which petitioners were entitled, not for lack of proof, but merely on the basis of an arbitrary refusal to act, then petitioners were denied that fundamental fairness which the 14th amendment to the U.S. Constitution and the Declaration of Rights of the Florida Constitution guarantee. State ex rel. Munch v. David (1940) 143 Fla. 236, 196 So. 491. Due process is not satisfied by a hearing which is only colorable or illusory. When a statute provides certain rights, such as equalization relief, these rights are fundamental; their observance is mandatory. 1 Fla. Jur., *Administrative Law,* §127.

## IV

The court has determined, then, that a critical stage of the valuation process was procedurally invalid. An assessment so affirmed suffers substantive defects. It is not a whole assessment. A primary ingredient is missing. This is fatal to the validity of the tax based thereon. A valid assessment is the first prerequisite to a valid tax. There cannot be one without the other. State v. Beardsley (1922) 84 Fla. 109, 94 So. 660; Lewis State Bank v. Bridges (1934) 115 Fla. 784, 156 So. 144. Since the assessment was invalid, the tax measured thereby is impermissible; it lacks the indispensable authority of statute. Not being authorized by law, the tax is void. Fla. Const. Art. IX, §3 (1885).

This does not mean petitioners are immune from the necessity of paying a tangible personal property tax for the year in question. In Florida, *liability* for ad valorem taxes does not depend upon a proper assessment. Hackney v. McKenney (1933) 113 Fla. 176, 151 So. 524. The property is still liable to be measured for a tax,

and a tax gauged *ad valorem* will still be lawfully imposed against it. The difficult question is: who will gauge it?

The 1968 board of equalization no longer exists. The 1970 board of tax adjustment probably has power to correct errors of its predecessor board on remand. But the successor board has completed its business for the year and adjourned. It will not be convened again until late summer of 1971. Petitioners, who filed in 1968, should not be compelled to wait upon justice for another year.

The court is left with two alternatives, recommended by counsel: it could reexamine the record for such proofs as are reflected there and make an independent judgment as to value based upon such proofs (it cannot take additional testimony or proceed on a *de novo* trial under the strict nature of certiorari); or it can remand with instructions to the tax assessor for revaluation. It is the opinion of the court that a lack of clear and certain evidence in the record precludes the former alternative. The latter was acceptable to all parties and will be adopted. We turn, then, to the merits of the method of assessment, as reflected in the record.

## V.

The record discloses that the tax assessor valued petitioners' tangible personal property for 1968 by application of a formula based upon 50% of either original cost or new replacement cost. The formula was applied uniformly to all tangible personal property in the county. Actual age or condition of the property was not considered apart from the formula. Testimony of the deputy tax assessor indicated that the formula was applied from the moment the property was purchased by the taxpayer. It continued for as long as the property was used, whether for one year or twenty years. Thus, for assessment purposes, new personal property was valued immediately at half its cost. After twenty years of use (assuming the property lasted that long) its value for tax purposes remained the same.

With the exception of cost, statutory criteria for determining value were ignored by the tax assessor. Age and condition of the property were not considered. The assessment was determined without regard to actual market value.

In Graham v. City of West Tampa (1916) 71 Fla. 605, 71 So. 926, 927-928, assessors are cautioned in this regard —

> Valuations for taxation must have a just relation to the real value of the property assessed, and there must be no substantial inequality in valuations in the various kinds and items of property

that is subject to the tax. The means and methods prescribed for ascertaining the value of property for taxation purposes must be substantially observed and followed, or else the assessment will be invalid and a taking of property without due process of law . . . [I]f the steps required to be taken in making valuations are not in fact and in good faith actually taken, and the valuations are shown to be essentially unjust or unequal abstractly or relatively, the assessment is invalid. Valuations of property for taxation must be ascertained in the manner required by law and must have relation to the actual value of the property; and there must be no substantial inequality in valuations.

The "means and methods prescribed for ascertaining the value of property" are set out in the applicable statutes. §193.021, Florida Statutes (1967). The record clearly shows that these means and methods were ignored in favor of an arbitrary formula. The resulting assessment had no relation to the intrinsic value of the property upon which a tax measured by that assessment was imposed. If the assessment, in fact, equalled the amount a purchaser willing but not obliged to buy would pay to one willing but not obliged to sell, it did so by accident, not by design. The law requires more than a mere chance for fair market value assessment. It requires at least a reasonable hypothesis of value. It demands that the assessment have a discernible relationship to the intrinsic worth of the property, not in use to the taxpayer, but for sale on the market. See: Walter v. Schuler (1965) 176 So.2d 81; Franks v. Davis (1962) 145 So.2d 228; West Virginia Hotel Corp. v. W. C. Foster Co. (1931) 101 Fla. 1147, 132 So. 842; City of Tampa v. Colgan (1935) 121 Fla. 218, 163 So. 577; Dade County v. Richter Jewelry Co. (Fla. 3rd Dist. 1969) 223 So.2d 375. The "use" value of personal property to the taxpayer is far too subjective to be a reliable gauge for assessing taxes. It is market value on January 1, 1968, that the assessor must determine. A formula method of assessment pegged solely to new costs without consideration of age or condition of the property will not result in fair market value. Overstreet v. Dean (Fla. 3rd. Dist. 1969) 219 So.2d 752.

## VI.

For the reasons stated, certiorari is granted and this cause is remanded to the respondent tax assessor, who is hereby ordered to reassess petitioners' tangible personal property as of January 1, 1968, taking into consideration all factors that will result in a fair market value assessment thereof. Upon such reassessment, the respondent tax collector is hereby ordered to refund to petitioners the difference, if any, between the amount of taxes already paid and that found to be due and payable measured by a fair market value assessment.