707 So.2d 378 (1998)
B.B. NELSON, Appellant,
v.
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, etc., Appellee.
No. 97-1249.
District Court of Appeal of Florida, Fifth District.
February 20, 1998.
Rehearing Denied March 10, 1998.
Robert R. Berry of Amari, Theriac & Eisenmenger, P.A., Cocoa, for Appellant.
Geoffrey T. Kirk, Department of Business and Professional Regulation, Division of Real Estate, Orlando, for Appellee.
COBB, Judge.
The appellant, B.B. Nelson, pled nolo contendere to charges of battery, a first degree misdemeanor, and criminal mischief, a second degree misdemeanor.[1] It was alleged that he had set off a "smoke bomb" at the offices of the St. Johns River Water Management Office in Melbourne, Florida, as a political protest over actions of that agency. The trial court withheld adjudication and placed Nelson on probation for 18 months.
Based on those occurrences, the Florida Department of Business and Professional Regulation, Division of Real Estate, filed an administrative complaint requesting sanctions against Nelson, who was a licensed real estate broker. Specifically, the Department alleged that Nelson was in violation of section 475.25(1)(f), Florida Statutes (1993),[2] by being found guilty, regardless of adjudication, of "a crime which directly relates to the activities of a licensed real estate salesperson or involves moral turpitude or fraudulent or dishonest dealings." Ultimately, the Department found Nelson guilty of violating the statute, fined him, and placed him on probation for 90 days. That departmental order is the subject of the instant appeal.
*379 Nelson contends that neither battery (by smoke) nor criminal mischief constitutes a crime involving moral turpitude or a fraudulent or dishonest dealing. He argues that moral turpitude involves "the idea of inherent baseness or depravity in the private social relations or duties owed by man to man or by man to society." See State ex rel. Tullidge v. Hollingsworth, 108 Fla. 607, 146 So. 660 (1933). Moral turpitude, says Nelson, involves more than simply committing some crime. The purpose of section 475.25, he contends, is to protect the public from dishonest real estate salesmenand the two crimes with which he was charged do not impugn his honesty or ability to deal fairly with the public.
In Pearl v. Florida Board of Real Estate, 394 So.2d 189 (Fla. 3d DCA 1981), the Third District held that possession of a controlled substance does not establish moral turpitude within the purview of section 475.25(1)(f). An example of moral turpitude would be a sale by a physician of bogus diplomas and licenses. State ex rel. Munch v. Davis, 143 Fla. 236, 196 So. 491 (Fla.1940). Bookmaking has been deemed a crime involving moral turpitude. Carp v. Florida Real Estate Commission, 211 So.2d 240 (Fla. 3d DCA 1968), writ discharged, 219 So.2d 427 (Fla. 1969). We have held that manslaughter by culpable negligence is such a crime. Antel v. Department of Professional Regulation, Florida Real Estate Commission, 522 So.2d 1056 (Fla. 5th DCA 1988).
We agree with Nelson that the misdemeanor offenses for which he was convicted do not show a "baseness or depravity" that impugn his ability to deal fairly with the public to the extent that suspension of his broker's license is warranted.
REVERSED.
GRIFFIN, C.J., concurs.
W. SHARP, J., concurs specially, with opinion.
W. SHARP, Judge, concurring specially.
While I agree with Judge Cobb's majority opinion in this case, I am concerned that its rationale may lead to capricious results in other cases. The majority opinion concludes that setting off a smoke bomb as a political protest over actions of the St. Johns River Water Management District is not a crime that involves moral turpitude. Thus, discipline by the Florida Department of Business and Professional Regulation, pursuant to section 475.25(1)(f), was inappropriate. However, we cannot define what kind of acts in this context constitute moral turpitude. In another case, we may "know it" when we see it,[1] and still be unable to articulate the rationale. Should license revocation or suspension turn on such a case-by-case, gut determination by a three judge appellate panel?
The federal district court in Corporation of Haverford College v. Reeher, 329 F.Supp. 1196 (E.D.Pa.1971) invalidated a statute which authorized the denial of student aid to anyone convicted of a "misdemeanor involving moral turpitude." Students had brought a declaratory judgment suit seeking a declaration that the statute was so vague that it did not give fair warning whether it applied to a particular act taken by a student in the future. The court noted that:
[I]f we go to the dictionaries, the last resort of the baffled judge, we learn little except that the expression is redundant, for turpitude alone means moral wickedness or depravity and moral turpitude seems to mean little more than morally immoral.
329 F.Supp. at 1205.
The federal court further observed that a large number of cases upholding such language in other contexts reach capricious results. It agreed with the dissenting judges in Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951):
It (the debate over the morality of some crimes) shows on what treacherous grounds we tread when we undertake to translate ethical concepts into legal ones, case by case. We usually end up by condemning all that we personally disapprove and for no better reason than we disapprove it. *380 329 F.Supp. at 1205. The court pointed out that the term "moral turpitude" says very little about which misdemeanors trigger the loss of financial aid, and that those affected by the statute (the students) and lawmakers and enforcers of the statute are of different generations and may not share a common outlook on what is and is not moral. In that context, the court ruled that phrase so vague it was unconstitutional.
In this case, the Department is authorized by the statute to take disciplinary actions against a real estate licensee if the licensee is involved in a criminal act which directly relates to his or her activities as a licensed broker or salesperson, or one that involves fraudulent or dishonest dealing. Those two bases are not involved in this case, and do not pose the same definitional and application difficulties as the third ground, which is involved in this case: a criminal act involving moral turpitude. Even though different generations may not be involved in this case (licensees and members of the Department), I submit that our population has become sufficiently diverse that the term "moral turpitude" no longer carries a sufficient warning to indicate what activities are proscribed. Further, what is contrary to morals has changed over time, and can vary from community to community. In my view, the Legislature should spell out which categories of crimes warrant imposition of sanctions against a broker or salesperson.
NOTES
[1] See §§ 784.03; 806.13, Fla. Stat. (1993).
[2] That statute provides:

475 .25 Disclipline.
(1) The commission may deny an application for licensure, registration, or permit, or renewal there of; may place a licensee, registrant, or permittee on probation; may suspend a license, registration, or permit for a period not exceeding 10 years; may revoke a license, registration, or permit; may impose an administrative fine not to exceed $1,000 for each count or separate offense; and may issue a reprimand, and any or all of the foregoing, if it finds that the licensee, registrant, permittee, or applicant:
(f) Has been convicted or found guilty of, or entered a plea of nolo contendere to, regardless of adjudication, a crime in any jurisdiction which directly relates to activities of a licensed broker or salesperson, or involves moral turpitude or fraudulent or dishonest dealing. The record of a conviction certified or authenticated in such form as to be admissible in evidence under the laws of the state shall be admissible as prima facie evidence of such guilt.
[1] Jacobellis v. Ohio, 378 U.S. 184, 195, 84 S.Ct. 1676, 1682, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring).