965 So.2d 847 (2007)
In re GUARDIANSHIP OF Sallie B. STEPHENS, an incapacitated person.
Jabessa Major and David Stephens, Appellants,
v.
Joe Ellen Rowe, court-appointed guardian of the property of Sallie B. Stephens, an incapacitated person; Lutheran Services Florida, Inc., court-appointed guardian of the person of Sallie B. Stephens, an incapacitated person; Frannie Scaglione; Fredrick Stephens; Steward "Stud" Stephens; John A. Stephens, Jr.; Eunice S. Gipson; April Anderson; and Steve B. Stephens, Appellees.
No. 2D06-4227.
District Court of Appeal of Florida, Second District.
September 28, 2007.
*848 Carl R. Hayes, Tampa, for Appellants.
Wallace B. Anderson, Jr., Tampa, for Appellee Joe Ellen Rowe.
No appearance for remaining Appellees.
VILLANTI, Judge.
Appellants Jabessa Major and David Stephens[1] appeal a final order of the probate court adopting the Report and Recommendation of the General Magistrate, which recommended that Lutheran Services Florida, Inc., be appointed guardian of the property and person of their mother (the Ward). We affirm but write to address why the order of appointment of a nonrelative of the Ward as guardian, as recommended in the Report, was appropriate even though there was at least one family member willing to serve as guardian of the Ward. We have jurisdiction to review this final order. See Fla. R.App. P. 9.030(b)(1)(A).
Jabessa and David, two of the Ward's nine adult children, argue that the probate court erred in appointing a "public guardian"[2] because it should have appointed a family member as guardian. They argue that the probate court erred by: (1) rejecting Jabessa and David's exceptions to the Magistrate's Report and Recommendation and (2) not reopening the matter to consider their petition for guardianship, even though that petition was filed fifty-five days after the final hearing held to determine their mother's incapacity and guardianship and ten days after the Magistrate issued his Report and Recommendation.
*849 Section 744.312(1), Florida Statutes (2006), styled "Considerations in appointment of guardian," provides that "the court may appoint any person[[3]] who is fit and proper and qualified to act as guardian, whether related to the ward or not." (Emphasis added.) Section 744.312(2) adds:
The court shall give preference to the appointment of a person who:
(a) Is related by blood or marriage to the ward;
(b) Has educational, professional, or business experience relevant to the nature of the services sought to be provided;
(c) Has the capacity to manage the financial resources involved; or

(d) Has the ability to meet the requirements of the law and the unique needs of the individual case.
(Emphasis added.) While the wishes of the ward shall be considered in appointing a guardian, they are not controlling. § 744.312(3)(a); Ahlman v. Wolf, 413 So.2d 787, 788 (Fla. 3d DCA 1982).
We review a probate court's determination regarding the appointment of a guardian under an abuse of discretion standard. See Wilson v. Robinson, 917 So.2d 312, 313 (Fla. 5th DCA 2005). The trial court's adoption and ratification of a general magistrate's report and recommendation is also reviewed under an abuse of discretion standard. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980). Because the appointment of a guardian is a discretionary act of the trial court, we review it for reasonableness; the trial court's determination "must be supported by logic and justification for the result, founded on substantial competent evidence." In re Guardianship of Sitter, 779 So.2d 346, 348 (Fla. 2d DCA 2000) (citing Canakaris, 382 So.2d at 1203). In other words, an appellate court will not find an abuse of discretion unless "no reasonable person would take the view adopted by the trial court." Wilson, 917 So.2d at 313 (citing Canakaris, 382 So.2d at 1203); Treloar v. Smith, 791 So.2d 1195, 1197 (Fla. 5th DCA 2001).
In Treloar, as in this case, the probate court appointed a professional guardian of the person and property. 791 So.2d at 1196. On appeal, the ward's son argued that the trial court erred in denying his petition for appointment as guardian. Id. The appellate court rejected the son's argument, holding that while section 744.312(2)(a) gave the next of kin first consideration, it did not mandate that a next of kin be appointed guardian. Id. at 1197. The statute specifically provides that the court may appoint a person who is qualified, whether related to the ward or not. Id. The Treloar court held that the record contained competent evidence to support the trial court's decision to appoint a nonrelative as guardian. Id. We find this logic persuasive because it places the emphasis, as do three of the four statutory factors, on a guardian's qualifications, which is clearly paramount to the ward's best interests.
In this case, one of the Ward's daughters, Frannie Scaglione, filed the original petition for appointment of guardian on October 21, 2003, seeking to be appointed as plenary guardian of her mother. Frannie filed an amended petition on January 16, 2004. On October 21, 2004, David agreed to this amended petition. There is no record evidence that *850 David ever withdrew his consent to Frannie's petition. In fact, he was apparently "surprised and distressed" to learn on the first day of the final hearing that Frannie no longer wished to be the guardian.
On November 7, 2005, the Magistrate held a pretrial conference and issued an order setting a final hearing on December 12, 2005, to determine incapacity and guardianship. That order was timely mailed to Jabessa and to Henry Noble, the attorney of record for David. More important, the order noted that there were "no competing petitions for the appointment of a guardian." Moreover, based on representations made at the pretrial hearing, the order appropriately required the attorneys, including David's counsel of record, to inform the court in writing within ten days if anyone would be contesting the incapacity or guardianship petitions. The record does not reflect any such documents being filed.
Thereafter, a final hearing took place. At the beginning of the hearing, on December 12, 2005, only one petition for guardianship was pendingdaughter Frannie's. The parties were unable to complete the hearing in one day, and the hearing was reconvened on February 9, 2006. On December 19, 2005, between the first and second hearing dates, son Fredrick[4] filed his own petition for guardianship. Notably, Fredrick and David were represented by the same attorney.
Over a period of two days, the Magistrate heard extensive testimony from numerous family members. David was present at both hearings and testified. He expressed an interest only to "help as guardian." While David's "offer" was not elaborated upon, as explained below, it is apparent from the Magistrate's Report and Recommendation that the Magistrate considered David's testimony.
Jabessa was subpoenaed to appear at the final hearing but failed to do so, allegedly because she was ill on both days of the final hearing. She never expressed any interest, orally or in writing or qualified or unqualified, in being appointed guardian. We also note that the Ward was represented by court-appointed counsel who waived her physical appearance at the final hearing. The Ward nevertheless appeared by telephone on the first day of the hearing and confirmed that she did not want to be present at the hearing.[5]
Apparently, the main cause of disagreement at the hearing was who would act as guardian as opposed to whether the Ward was incapacitated. On March 24, 2006, the Magistrate issued a Report and Recommendation, finding the Ward to be incapacitated. The Magistrate then recommended that Lutheran Services be appointed guardian of the property[6] and of the person.[7]
*851 On April 4, 2006, David and three of his siblings and the Ward filed handwritten exceptions to the Magistrate's Report and Recommendation.[8] This document for the first time alleged that the Ward wanted David to be appointed guardian. However, as is required, the Magistrate's Report and Recommendation had already adequately considered the Ward's wishes. The Magistrate specifically found:
Even if that had been proven true by clear and convincing evidence [that the Ward did not want "any outsiders involved in her affairs"], the undersigned would still find that having a neutral, third-party guardian, and not a family member, would be in the Ward's best interest. That would be the best way to ensure that the guardian is looking out only for the Ward and making decisions that are truly in her best interests and not ones that may be clouded by a family member's competing self-interest. . . . [[9]]
Thus it is apparent to us that the Magistrate considered the hearsay assertion that the Ward wished to have David appointed as guardian. Moreover, regardless of the accuracy of this assertion, the Ward's wishes here would not trump the need for a qualified, neutral guardian, which was the driving force compelling the court's appointment decision. On April 5, 2006, David and Jabessa filed a petition to be appointed their mother's co-guardians. However, there is no record evidence that they set, or even tried to set, their petition for hearing as required by section 744.3371(1).
Thereafter, the record reflects that a hearing was held on April 26, 2006, to address the exceptions filed by the siblings, but the record on appeal does not contain a transcript of that hearing. On May 8, 2006, the probate court issued its order adopting the Magistrate's Report and Recommendation and rejecting the exceptions. Notably, the probate court's five-page order thoroughly analyzed the exceptions and held that the Magistrate's findings were supported by substantial, competent evidence. Our independent review of the record on appeal supports the trial court's assessment. Neither Jabessa nor David moved for rehearing or reconsideration of the probate court's order nor otherwise contested the qualifications of the appointed guardian on any basis other than its nonrelative status.
Having reviewed the record, and under the circumstances of this case, it is clear that the trial court did not abuse its discretion in appointing nonfamily members as guardians of the Ward and her property. The Magistrate was presented with evidence that the family was "dysfunctional," that the siblings were unable to get along and cooperate with each other to care for *852 their mother, and that there were serious conflicts about how the family business should be run, inclusive of the Ward's assets and money in general. Some of the siblings had made choices which could be in conflict with and affect the Ward's financial stability, such as, for example, setting up an irrevocable trust containing questionable terms. Some of the siblings had created "alliances" to the exclusion of other siblings. They were unable to come together on simple issues, including the core issue concerning their mother's care. As evidenced by this appeal, they could not even agree on the designation of a guardian. In view of family dynamics, appointing one of the siblings as a guardian for any purpose would clearly not be in the Ward's best interests. Additionally, because there was substantial, competent evidence supporting the probate court's rejection of the Appellants' exceptions and the court's adoption of the Magistrate's Report and Recommendation, we are compelled to affirm.
While we recognize that family members, if otherwise qualified, are generally entitled to preference in appointment as guardian over strangers, that preference can be overcome if they, intentionally or unintentionally, engage in conduct detrimental to a ward's best interests. Moreover, even when a family member has acted with the best interests of the ward in mind, there may well be instances where it would not be an abuse of discretion for the probate court to nevertheless appoint a nonfamily member guardian. Here, but for the trial court's wise exercise of discretion and refusal to consider solely the first statutory preference favoring family members, the Ward's estate would likely be jeopardized or, at the very least, suffer financially by family infighting that would necessitate numerous future hearings on even the most mundane of matters. As recognized by the probate court, appointing a family member guardian would create a "tug-of-war" over the Ward and her property. This would not have been in keeping with the Ward's best interests the polestar in any guardianship proceeding. See Miller v. Goodell, 958 So.2d 952, 954 (Fla. 4th DCA 2007).
We also realize that family members would naturally believe they should be "entitled" to appointment. However, in the guardianship arena, the legislature has rightly determined that such expectations are not binding on the court. Thus any "preference" for family applies only within certain discretionary bounds. The guardianship statute does not confer upon certain family members an absolute and automatic right to be appointed guardians. See In re Guardianship of R.N.B., 429 So.2d 796, 797 (Fla. 4th DCA 1983) ("Indeed, the statute provides that the court may appoint any person `who is qualified to act as guardian, whether related to the ward or not.'" (quoting section 744.312(1), Fla. Stat. (1981))). The best interests of the Wardwhich include choosing a qualified guardian for the Wardcome first. Family member preference in and of itself is secondary, regardless of how well qualified the family members are.
Finally, we also note that the probate court here had no sua sponte duty to determine that an additional, competing petition for appointment of coguardians was filed subsequent to the Magistrate's Report and Recommendation. Jabessa and David cite no authority for this proposition, and under the facts and procedural history of this matter, we discern none. Not only was this latter petition filed untimely, but no interested party ever notified the court of its existence, set it for hearing, or moved to postpone the court's ruling until the petition was considered. Having reviewed and rejected the Appellants' *853 claimed errors contained in their exceptions to the Magistrate's Report and Recommendation, it nevertheless appears that the belated request to be appointed guardians was implicitly considered and overruled by the Magistrate and the probate court. Regardless, it was not an abuse of discretion for the probate court not to otherwise consider this untimely petition.
Affirmed.
CANADY and LaROSE, JJ., Concur.
NOTES
[1] Because many of the parties involved in this appeal have the same last name, we will refer to each sibling by his or her first name.
[2] The term "public guardian" as used by Jabessa and David is a misnomer. The guardian appointed by the probate court was a professional guardian, typically chosen from a list of available professionals who are paid for their services from guardianship funds or who serve without compensation when funds are unavailable. The term "public guardian" connotes the concept of a state-funded agency, which may be appointed to represent destitute wards in certain limited instances not relevant to this appeal. See §§ 744.701-.715, Fla. Stat. (2006).
[3] The reference to "person" in this context includes individuals or corporate entities that typically represent wards when no qualified family members are available or willing to serve as guardian. See § 1.01(3), Fla. Stat. (2006).
[4] Throughout the record, this sibling's name appears as "Fredrick" and "Frederick." We will refer to him as "Fredrick."
[5] Further, the siblings' exceptions to the Report and Recommendation indicate that one of the Ward's sons claimed that when the Ward was asked if she wanted to appear at the hearing, the Ward said, "No! I don't want anything to do with it!" (R. 309)
[6] The property of the Ward includes real estate, Social Security income, automobiles, bank accounts, and a family business named "Big John Alabama Bar-B-Que Inc." That family business alone allegedly generates one million dollars per year.
[7] For reasons not clear from this record, prior to the issuance of letters of guardianship, Lutheran Services "resigned" as guardian of the Ward's property. Thereafter, the actual guardian appointments were splitthe court appointed Lutheran Services as guardian of the person and "independently" appointed Jo Ellen Rowe to act as guardian of the property. The Appellants do not argue any lack of notice concerning Rowe's appointment, qualifications, or the Magistrate's initial recommendation that Lutheran Services be appointed dual guardian. Conceivably, if important, these issues were addressed at the untranscribed hearing where the probate court heard the exceptions to the Magistrate's Report.
[8] Jabessa's name was included in the signature lines of the exceptions, along with the names of six of her siblings; however, neither she nor two of the siblings listed signed the document. Two additional siblings (John and Frannie) were not listed.
[9] We would further note that the appointment of a professional guardian in this case is even more appropriate because such guardians, unlike family members, adhere to objective, national standards under the auspices of the National Guardianship Association, available at http://www.guardianship.org/pdf/ standards.pdf. Family members, regardless of their good intentions, are not required to adhere to these standards nor do they generally have prior guardian training or experience.