POLEN, J.
 

 Appellants Donna Morris (“Morris”) and Mildred Glinton (“Glinton”) timely appeal the trial court’s order granting Appellee Walter Knight (“Knight”) guardianship of Estelle Pratt Barker (“Barker”). This court has jurisdiction. Fla. R.App. P. 9.030(b)(1)(A) (2008).
 

 Barker is ninety-seven years old and has been found to be incapacitated. Three individuals petitioned the trial court for guardianship of her person and property: Glinton, who is Barker’s first cousin; Morris, whose mother is Barker’s first cousin; and Knight, who is a neighbor and friend of Barker. A hearing was held on the three competing petitions.
 

 Glinton resides in Detroit, Michigan and owns homes in Long Island, New York, Fort Pierce, and Fort Lauderdale, Florida. At trial, she testified that since 1997 she has visited Barker two or three times during the four or five months that she spent each year in Florida. During each visit, she would take Barker to Chinese restaurants and to visit various family members. She also added that if appointed guardian, she would move to Florida.
 

 Contrary to Glinton’s testimony, another cousin of Barker’s, George Glinton, testified that he visited Barker three or four times a month for the last five or six years and never became aware of any visits by Mildred Glinton. Marion Wade, a former wife of Barker’s nephew, also testified that between 2002 and 2004, she helped Barker pay her bills and had never heard of Mildred Glinton until three months before the trial. Last, Barker’s attorney testified that in the thirty years that he served Barker, she never talked about or came in with any family member except Delisa Morris.
 

 Regarding Knight, Glinton asserted that he used Barker’s money to purchase a new car for himself and that he had been Baker Acted for mental illness. Glinton, however, could not offer any evidence of such allegations during her testimony, and the court thus found them to be false. The court also determined that Glinton made other representations not supported by evidence and ultimately found her unfit to serve as guardian.
 

 Morris filed her petition for guardianship shortly before the trial, and the court allowed her to proceed over Knight’s objection. Morris resides in Palm Beach County and runs her family’s business in Lake Worth, Florida. Before that, Morris was terminated from her employment as a financial assistant due to allegations that she misappropriated her employer’s funds. Criminal charges were brought against her, but later dismissed.
 

 When asked by the court why she had not visited Barker more than three times between 2006 and 2007, Morris responded that Barker’s nursing home “gives [her] the creeps” and “turns [her] stomach.” Morris added that if appointed guardian, she would move Barker to a better facility, but she admitted that she had never visited that facility.
 

 Knight has known Barker since he was a child visiting his grandmother who lived across the street from Barker in the 1960s. Knight is a former U.S. Marine and re
 
 *1238
 
 tired sanitation worker for the City of West Palm Beach. He has also worked as a mental health technician and as an aide in a nursing home. He now receives both Veteran’s Administration benefits and a pension from the City of West Palm Beach. At trial, Knight stated that from about 1999 to 2002, Barker’s family did not visit her much. Knight would see Barker come out on the porch of her home around 7:00 a.m. each day and sit alone all day. Knight began stopping by to bring Barker coffee and food, to visit with her, and to wash her clothes and clean her house. When Barker’s doctor made the decision to place Barker in a nursing home, Knight continued to visit her there six days a week for two hours each day. Knight testified that he intends to continue visiting Barker, washing her clothes, and bringing her snacks whether he is appointed guardian or not.
 

 Grace Morrow (“Morrow”), an adult protective investigator with the Department of Children and Families, described Barker and Knight’s relationship as being “like a mother-son relationship.” Morrow also added that Knight was always there for anything that she or Barker needed and that Barker was happy with Knight’s care and companionship.
 

 Morrow first became involved in Barker’s life when she received abuse allegations concerning Barker. At that point, Barker had not been adjudicated incapacitated. Nonetheless, Morrow found that Delisa Morris, sister of Donna Morris and attorney-in-fact of Barker, had exploited Barker by forging Barker’s checks. Thereafter, Barker executed a power of attorney appointing Knight as her attorney-in-fact, a deed transferring her home to Knight while reserving a life estate, and a will leaving all of her assets to Knight. Barker’s attorney found her to be competent and clear in her intentions at the time of the execution of those documents.
 

 At the conclusion of the trial, the court denied Morris and Glinton’s petitions for guardianship and appointed Knight as Barker’s guardian. The court considered the fact that Morris and Glinton are related to Barker, but did not find that fact to be dispositive. Instead, based on Knight’s fitness to serve as guardian and Barker’s demonstrated wish to entrust her care to Knight, the court determined Knight to be the most appropriate person to serve Barker’s best interests. Morris and Glin-ton now appeal that decision.
 

 The standard of review here is abuse of discretion.
 
 In re Guardianship of Sitter,
 
 779 So.2d 346 (Fla. 2d DCA 2000). The appointment of guardian is a discretionary act of the trial court, which must be supported by logic and justification and founded on substantial competent evidence.
 
 Id.
 
 at 348. The trial court’s decision should be reviewed for reasonableness.
 
 Id.
 
 And the appellate court should not find an abuse of discretion unless “no reasonable person would take the view adopted by the trial court.”
 
 Wilson v. Robinson,
 
 917 So.2d 312 (Fla. 5th DCA 2005).
 

 Morris and Glinton argue that the trial court abused its discretion in appointing Knight as guardian because they, as family members of Barker, should have been given preferential consideration over Knight and because Knight has, what they claim, a conflict of interest.
 

 Regarding considerations in appointment of guardian, the Florida Statute directs as following:
 

 (1) Subject to the provisions of subsection (4), the court may appoint any person who is fit and proper and qualified to act as guardian, whether related to the ward or not.
 

 
 *1239
 
 (2) The court shall give preference to the appointment of a person who:
 

 (a) Is related by blood or marriage to the ward;
 

 (b) Has educational, professional, or business experience relevant to the nature of the services sought to be provided;
 

 (c) Has the capacity to manage the financial resources involved; or
 

 (d) Has the ability to meet the requirements of the law and the unique needs of the individual case.
 

 (3) The court shall also:
 

 (a) Consider the wishes expressed by an incapacitated person as to who shall be appointed guardian;
 

 (b) Consider the preference of a minor who is age 14 or over as to who should be appointed guardian;
 

 (c) Consider any person designated as guardian in any will in which the ward is a beneficiary.
 

 (4) If the person designated is qualified to serve pursuant to s. 744.309, the court shall appoint any standby guardian or preneed guardian, unless the court determines that appointing such person is contrary to the best interests of the ward.
 

 § 744.312, Fla. Stat. (2004).
 

 Under this statute, “a person who is related by blood or marriage to the ward” does receive preference in appointment; however, the inquiry does not end there. The court also has the discretion to give preference to a non-relative who possesses particular experience or ability to serve as guardian.
 
 See, e.g., Treloar v. Smith,
 
 791 So.2d 1195 (Fla. 5th DCA 2001) (finding that while next of kin are given first consideration, statute does not man-datorily require that such an appointment be made; rather, statute specifically provides that court may appoint any person who is qualified, whether related to the ward or not). Moreover, it is the best interest of the ward that trumps other considerations in the appointment of a guardian.
 
 See, e.g., In re Guardianship of Stephens,
 
 965 So.2d at 852 (“The best interests of the Ward — which include choosing a qualified guardian for the Ward— come first. Family member preference in and of itself is secondary, regardless of how well qualified the family members are.”).
 

 In this case, Morris and Glinton argue that they are better fit than Knight to serve Barker’s interests because they plan to move her to a better nursing home. Even setting aside the trial court’s finding that both Morris and Glinton are unfit to become Barker’s guardian, they have not demonstrated how simply moving Barker from one facility to another would best serve her interests. Morris and Glinton have maintained minimal involvement in Barker’s care, whether family or not, and they are not now in the position to serve Barker’s best interests, whether family or not. It is thus our view that the trial court was reasonable in concluding that Barker’s care and interests would be best left up to Knight.
 
 See In re Guardianship of Stephens,
 
 965 So.2d 847, 849 (Fla. 2d DCA 2007) (finding that as long as the record contained competent evidence to support the trial court’s decision to appoint a non-relative as guardian, there is no abuse of discretion).
 

 Morris and Glinton argue additionally that Knight has a conflict of interest that prevents him from becoming Barker’s guardian. They contend that because Knight is the sole beneficiary of Barker’s will, he stands to gain more by spending less on Barker’s care. We find, however, no record evidence of such conflict. First, it does not appear from the record that Barker has any significant as
 
 *1240
 
 sets other than her house. Second, the lower court’s findings of fact reflect that Knight selflessly used his own money for Barker’s care while her relatives remained minimally involved in her life. Even if this claim is supported by the record, it is not preserved for appellate review, as it was not argued below.
 

 As such, we affirm the trial court’s decision to appoint Knight as Barker’s plenary guardian and to deny Morris and Glinton’s petitions for guardianship.
 

 GROSS, C.J., and GOLDENBERG, RENEE, Associate Judge, concur.