# Third District Court of Appeal

## State of Florida

Opinion filed December 15, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-700
Lower Tribunal No. 82-2432
_____

**Patricia Ash,**
Appellant,

vs.

**In re: Guardianship of Aaron Ash,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Ross & Girten and Lauri Waldman Ross; Duane Morris, LLP, Gutman Skrande, and Marsha G. Madorsky, for appellant.

Sloto & Diamond, PLLC, and James R. Sloto, for appellee.

Before FERNANDEZ, C.J., and HENDON, and GORDO, JJ.

FERNANDEZ, C.J.

Patricia Ash, the mother of the adult ward, is an "interested party" in the underlying guardianship case and the petitioner below. Patricia appeals the trial court's final order denying her "Verified Petition for Successor Guardian." For the reasons that follow, we reverse the trial court's order on appeal and remand to the trial court for further proceedings.

The adult ward, Aaron Ash, was born in 1972, permanently physically and mentally disabled due to medical malpractice. Patricia and her husband/Aaron's father, Hyman Ash, the respondent below, divorced after Aaron's birth. In 1992, the probate court adjudicated Aaron to be incapacitated and required a plenary guardian for him. Patricia and Hyman agreed it was in Aaron's best interests that Hyman be appointed guardian, with liberal visitation and equal decision-making rights for Patricia.

At the time of the underlying petition, Hyman and his current wife lived in one townhome. Aaron lived with Nelson Almendarez ("Nelson"), Aaron's primary caregiver of thirty-two years, and Nelson's family, in a second adjacent townhome owned by Hyman.

On December 28, 2019, Hyman told Patricia he wanted Patricia to take over the guardianship. Thus, on February 5, 2020, Patricia filed a "Verified Petition for Appointment of Successor Guardian of the Person." The petition alleged that Hyman agreed to transitioning guardianship of Aaron from

himself to Patricia. Patricia outlined the actions she would take upon her appointment as successor guardian of Aaron. Hyman objected to the Verified Petition. He contended that while he agreed to transitioning Aaron's guardianship to Patricia, he objected to her appointment until she completed the steps she outlined in her Verified Petition.

On October 13, 2020, a hearing on Patricia's petition was held before the Honorable Yvonne Colodny. At the beginning of the hearing, the judge stated:

> So Patricia is requesting to be the successor guardian, it's my understanding that Hyman filed an objection stating that he does not object to her becoming the successor guardian, just that at this point, he does not believe that she has completed the necessary steps for a seamless transition of those responsibilities. Is that correct, [Hyman's counsel]?

Hyman's counsel replied, "Yes, Your Honor."

At the hearing, Patricia testified that she sold her home in Palm Beach County, had located a residence for herself in Miami-Dade, and was now looking for a house with a bedroom on the first floor for Aaron and his caregivers for easy ingress/egress, which they needed. Patricia had no access to information about Aaron's budget, government benefits, and finances, nor did she have the authority to negotiate on the guardianship's behalf, thus she did not have the information she needed to secure Aaron's residence. Patricia testified that the house she was renting in Miami-Dade

3

County was for her, and that Aaron would have his own separate house where his support staff would care for him.

At the end of the hearing, Judge Colodny reserved ruling on Patricia's petition. In the probate court's October 14, 2020 written order reserving ruling on Patricia's petition, the court directed the bank to provide Patricia with all the details of Aaron's budget and government benefits. The judge also authorized Patricia to speak to Aaron's current caretakers, doctors, physical therapists, etc. "to establish a care plan and retain care for" Aaron and "to pursue the acquisition or lease of a Miami Dade County residence" for Aaron.

On November 12, 2020, Patricia and her counsel met with the bank to discuss Aaron's expenses and income. In addition, on December 3, 2020, Patricia, her accountants, and her counsel met with Hyman, his counsel, and members of his bookkeeping staff. Following an agenda, Patricia's counsel took notes and emailed a "Summary & Wrap up" of the December 3 meeting to Hyman's counsel. Patricia's counsel noted that at the beginning of the meeting, Hyman stated his primary concern was that Aaron's current caregiver framework be maintained and that his residence be finalized by Patricia "as the key components of a transition." There was no mention of or objection to Patricia living separately from Aaron. In his email to Hyman's counsel, Patricia's attorney told Hyman's counsel, "let me know if anything

4

appears incorrect." Hyman's counsel did not notify anyone of any corrections to the "Summary & Wrap up" email.

On December 10, 2020, Patricia filed a "Successor Guardian's Proposed Transition Plan," along with the financial analysis and updated guardianship budget created by her accounting firm. In the plan, Patricia outlined how she had met each step listed in paragraph 12(a)-(e) of her petition that Hyman had required before transitioning Aaron's guardianship. Also attached as an exhibit to the Proposed Transition Plan was a December 9, 2020 "Memorandum of Understanding as to Aaron Ash's Housing & Care." In this Memorandum signed by Patricia and Nelson, Nelson agreed to continue to serve as Aaron's primary caregiver, and that Aaron would live with Nelson and Nelson's family in Nelson's property that he owned in Miami-Dade County.

On December 14, 2020, Hyman moved to continue the hearing on Patricia's petition and filed a "Response in Opposition to the Proposed Transition Plan." He now alleged that he should remain as co-guardian because he found out for the first time that Patricia's plan was to live separately from Aaron. That same day, Judge Colodny recused herself *sua sponte*. The December 14, 2020, hearing on Patricia's verified petition was

rescheduled to January 28, 2021, before the successor judge, the Honorable Jorge E. Cueto.

On January 20, 2021, Patricia filed a "Reply in Support of Transition Plan." The plan outlined Patricia and Hyman's agreement at the October 13, 2020 hearing and how Patricia complied with all the agreed-to terms. Patricia contended that Hyman's current position conflicted with his response to her petition and the representations he made previously in open court to Judge Colodny. Thus, Patricia argued, Hyman should be bound by his prior pleadings and should be estopped from changing his position, as Patricia had complied with everything Judge Colodny required.

Hyman then again moved for a continuance on Patricia's petition hearing and filed a "Declaration that Proceeding was Adversary." Patricia filed a response in opposition to Hyman's motion for continuance, as well as a motion to strike the adversary declaration.

Before the January 28, 2021 hearing on Patricia's petition, the parties stipulated to certain facts, including that Nelson has been Aaron's caregiver for thirty-two years, the details of Aaron's current living and financial situation, and Patricia's ongoing involvement in Aaron's life.

At the January 28, 2021 hearing before Judge Cueto on Patricia's petition, Patricia testified that her December 28, 2019 conversation with

6

Hyman about Patricia taking over the guardianship led Patricia to hire her counsel and file her petition. The same day she hired her attorneys, she put her house in Palm Beach County on the market. Patricia testified that Aaron has been the priority in her life. Patricia arranged for Aaron to reside with Nelson and his family in the four-bedroom home owned by Nelson. Nelson would continue to serve as Aaron's primary caretaker.

Next, before Hyman testified at the hearing, Patricia again asked the probate court to note her objection to Hyman's response and asked that Hyman not be allowed to contradict his previous pleadings and agreement. Hyman then read a prepared statement where he contended for the first time that Patricia approached him to be appointed successor guardian and that he did not know that Patricia intended to live separately from Aaron. He testified that he was going to try and save money by not keeping on Nelson and his family. When his attorney asked him if he would have agreed to transition Aaron's guardianship to Patricia had Hyman known about Patricia's separate house intention, Hyman replied, "No." Hyman then testified that he was willing to stay on as guardian.

At the end of the hearing, the probate court did not make any ruling or make any determinations on the credibility of the parties, nor did it make any

determination about Aaron's best interests. The court asked the parties for proposed orders.

Thereafter, on February 8, 2021, the judge entered the order on appeal ("Order Denying Verified Petition for Appointment of Successor Guardian of the Person"), which adopted Hyman's proposed order verbatim. The order provides, "Hyman testified at the January 28, 2021 hearing that he would never have started down the road of transitioning the guardianship to Patricia if he knew about her intentions to live separately from Aaron," and that "Hyman at the January 28, 2021 hearing [sic] that he believed if Patricia would be taking custody of Aaron, it would be in her home." On this basis, the court determined:

> The principle of detrimental reliance is inapplicable to the instant case. Hyman's objections to Patricia's Verified Petition and Proposed Transition Plan clearly illustrate his lack of agreement on the terms by which Patricia would assume the role of successor guardian of the person. Any of Patricia's undertakings prior to a court appointment were solely her decision and at her risk.

Patricia moved for rehearing. While her motion was pending, Hyman terminated Nelson as caregiver and evicted Nelson and his family from Aaron's condominium. Patricia then filed a "Petition to Appoint Emergency Court Monitor to Reinstate the Ward's Primary Caregiver," which has not been ruled on. Patricia's motion for rehearing was denied. She then filed this appeal.

8

## **DISCUSSION**

Patricia contends, in part, that the probate court erred in refusing to limit Hyman to his original position and in failing to consider Aaron's best interests.[1] "An appellate court reviews a probate court's appointment of a guardian under an abuse of discretion standard." Acuna v. Dresner, 41 So. 3d 997, 999 (Fla. 3d DCA 2010). However, any issues of law are subject to *de novo* review. Drelich v. Guardianship of Drelich, 201 So. 3d 15, 17-18 (Fla. 3d DCA 2013).

### **Equitable Estoppel**

Under Florida law, parties are bound by the allegations in their pleadings. Carvell v. Kinsey, 87 So. 2d 577, 579 (Fla. 1956). "[A]dmissions contained in the pleadings as between the parties themselves are accepted as facts without the necessity of supporting evidence." Id. Furthermore, "'litigants are not permitted to take inconsistent positions.'" Bove v. Naples HMA, LLC, 196 So. 3d 411, 413 (Fla. 2d DCA 2016), quoting Federated Mut. Implement & Hardware Ins. Co. v. Griffin, 237 So. 2d 38, 41 (Fla. 1st DCA 1970). The First District Court of Appeal in Griffin held:

> The general rule has long been established in Florida and other jurisdictions that litigants are not permitted to take inconsistent

---

[1] We decline to address the other issue on appeal.

9

positions in judicial proceedings and that a party cannot allege one state of facts for one purpose and at the same action or proceeding deny such allegations and set up a new and different state of facts inconsistent thereto for another purpose.

Id. at 41. Moreover, "a pretrial stipulation limiting the issues to be tried is 'binding upon the parties and the court and should be strictly enforced.'" LPI/Key West Associates, Ltd v. Beachcomber Jewelers, Inc., 77 So. 3d 852, 854 (Fla. 3d DCA 2012) (quoting Lotspeich Co. v. Neogard Corp., 416 So. 2d 1163, 1165 (Fla. 3d DCA 1982). Furthermore:

'Equitable estoppel' precludes a person from maintaining a position inconsistent with another position which is sought to be maintained at the same time or which was asserted at a previous time; and, as a general rule where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim or right, he cannot afterward assume a position inconsistent with such act or conduct to the prejudice of another who has acted in reliance on such conduct. The doctrine requires of a party consistency of conduct, when inconsistency would work substantial injury to the other party.

United Contractors, Inc. v. United Const. Corp., 187 So. 2d 695, 701-02 (Fla. 2d DCA 1966).

Here, equitable estoppel prevents Hyman from objecting to Patricia becoming the successor guardian because Hyman previously maintained the position that he supported transferring the guardianship to Patricia, but only objected to whether she was prepared to take over as guardian, due to Aaron's housing issue not yet being resolved at the time of the first hearing

10

before Judge Colodny. In what was initially a non-adversary proceeding, Hyman agreed to Patricia being appointed as successor guardian if she completed the steps outlined in her petition, specifically the steps in paragraph 12(a)-(e). Patricia's Verified Petition stated that Hyman had requested to relinquish serving as guardian so Patricia could be the successor guardian. Hyman agreed to this in his Response filed February 19, 2020, and on the record during the October 13, 2020, hearing before Judge Colodny. In addition, the "Summary & Wrapup" email sent by Patricia's counsel to Hyman's counsel on December 10, 2020, was admitted into evidence at the hearing before Judge Cueto without objection. Further, Patricia clearly testified during the October 13, 2020, hearing before Judge Colodny that she would not be living with Aaron and that he would be living in separate housing with his caregiver of 32 years and the caregiver's family. Hyman and his counsel were present at that hearing, heard that testimony, and did not object.

Thus, the court and everyone at the October 13, 2020 hearing were already aware that Patricia and Aaron would be living separately. Accordingly, the only issue to be tried was whether Patricia completed the steps listed in her petition. That is why Judge Colodny in her written order authorized Patricia to receive financial information from the guardianship and

11

to discuss a budget with Hyman's budget staff and the bank, while also specifically authorizing her to find a residence for Aaron in Miami-Dade County. The court thus directed Patricia to undertake the requisite steps to find Aaron housing and decide his caregiver issue before Patricia could be appointed successor guardian of Aaron. After Patricia completed all the steps and Judge Colodny recused herself, Hyman changed his position when he argued to Judge Cueto that he never knew Patricia would be living in a separate home from Aaron. We conclude that Hyman cannot now change his position and object to Patricia becoming the successor guardian. This is the type of inconsistent position that equitable estoppel is intended to prevent. United Contractors, Inc., 187 So. 2d at 701-02.

Moreover, in the order on appeal, the probate court found a lack of reasonable reliance. However, Hyman initially required that Patricia undertake preparations before she could become successor guardian, so he cannot now contend that those undertakings were "solely her decision and at her risk," as Hyman's counsel argued at the January 28, 2020 hearing and as the judge found in the order on appeal. Patricia should not be penalized for acting on the probate court's ruling and Hyman's request to implement the Transition Plan, especially when completing the outlined steps was the

prerequisite to Patricia being appointed as Aaron's successor guardian, which was in Aaron's best interest.

**<u>Best Interests of the Ward</u>**

Under chapter 744, Florida Statutes, Florida's Guardianship Law, in any guardianship proceeding, the public policy and purpose is the protection of the ward. <u>Hayes v. Guardianship of Thompson</u>, 952 So. 2d 498, 505 (Fla. 2006). The "polestar in any guardianship proceeding" is the ward's best interests. <u>In re Guardianship of Stephens</u>, 965 So. 2d 847, 852 (Fla. 2d DCA 2007). The legislative intent of the guardianship statute is, in pertinent part, "…meeting the essential requirements for their physical health and safety, in protecting their rights, in managing their financial resources, and in developing or regaining their abilities to the maximum extent possible…" § 744.1012(3), Fla. Stat. (2019). In addition, chapter 744 is to "be liberally construed to accomplish this purpose. <u>Id.</u>

Moreover, historically, guardianship courts are courts of equity. <u>Romano v. Olshen</u>, 153 So. 3d 912, 918 (Fla. 4th DCA 2014). Guardianship courts "have wide discretion in fashioning remedies to satisfy the exigencies of the circumstances." <u>Schroeder v. Gebhart</u>, 825 So. 2d 442, 446 (Fla. 5th DCA 2002). "Thus, a court of equity [and a guardianship court] is authorized

13

to expansively construe Chapter 744 to protect the interests of the ward." Romano, 153 So. 3d at 918; § 744.1012(3), Fla. Stat. (2019).

Finally, the guardian of an incapacitated person is a fiduciary and "shall act within the scope of authority granted by the court and as provided by law." § 744.361(1) and (2), Fla. Stat. (2019). "A guardian may not act in a manner contrary to the ward's best interests under the circumstances." § 744.361(4), Fla. Stat. (2019).

During the January 28, 2021 hearing before the probate court on Patricia's petition, the court neither analyzed Aaron's best interests, nor does the order on appeal entered by the probate court contain any analysis or consideration of Aaron's best interests. Patricia presented unrebutted evidence to the probate court that her proposed transition plan provided substantial benefits to Aaron as it related to his current living plan with Hyman as guardian. Patricia and Hyman stipulated that while Hyman was Aaron's guardian, Aaron lived on the second floor of his condominium, had to use a chairlift to go up and down from his room, had a noncompliant ADA ramp, and had not been outside since 2019, except for hospitalizations. The parties further stipulated that Hyman had not maintained Aaron's social security checks in a segregated account and that disbursements from the bank for Aaron's benefit were also not maintained in a separate account.

Nelson, who was Aaron's caregiver for 32 years, was so familiar with Aaron that he could anticipate Aaron's seizures. The successor judge did not consider Aaron's best interests, even when put on notice that Hyman had fired Nelson as Aaron's caregiver and evicted Nelson and his family from one of Hyman's condominiums. In contrast, Hyman had previously stressed numerous times throughout the underlying proceedings before the probate court the importance of maintaining Aaron's living conditions with Nelson as his primary caregiver. As the Fifth District Court of Appeal in Sun Bank and Trust Company v. Jones, 645 So. 2d 1008, 1017 (Fla. 5th DCA 1994); rev. denied, 658 So. 2d 991 (Fla. 1995) recognized, "Courts must scrupulously oversee the handling of the affairs of incompetent persons under their jurisdiction and err on the side of over-supervising rather than indifference." Accordingly, the probate court erred in not considering Aaron's best interests.

## CONCLUSION

An appellate court defers to a circuit court's findings of fact when they are based on competent substantial evidence. State, Fla. Highway Patrol v. Forfeiture of Twenty Nine Thousand Nine Hundred & Eighty (29,980) in U.S. Currency, 802 So. 2d 1171, 1172 (Fla. 3d DCA 2001). However, this

"presumption of correctness never requires an appellate court to disregard record evidence that disproves the lower court's findings or that reveals its ruling to be an abuse of discretion." In re Doe, 932 So. 2d 278, 284 (Fla. 2d DCA 2005). Here, the evidence before this Court does not support paragraphs five, six and eight in the order on appeal, stating that Hyman did not know that Patricia would be living separately from Aaron and that Patricia's undertakings prior to the court appointing her as Aaron's guardian were solely her decision and taken at her own risk. Accordingly, the trial court abused its discretion in allowing Hyman to change his position to the detriment of Aaron. For these reasons, we reverse the probate court's order on appeal and remand the case for further proceedings.

Reversed and remanded for further proceedings.