952 So.2d 498 (2006)
William F. HAYES, Jr., et al., Petitioners,
v.
GUARDIANSHIP OF Mae E. THOMPSON, etc., Respondent.
No. SC05-675.
Supreme Court of Florida.
November 9, 2006.
Rehearing Denied March 14, 2007.
*500 Eduardo I. Rasco and Jessica B. Lassman of Rosenthal, Rosenthal, Rasco, LLC, Aventura, FL, for Petitioners.
Stephen B. Fuller, Coral Gables, FL, for Respondent.
PARIENTE, J.
We have for review Hayes v. Guardianship of Thompson, 934 So.2d 493 (Fla. 3d DCA 2005), in which the Third District Court of Appeal certified conflict with the Fourth District Court of Appeal's decision in Bachinger v. Sunbank/South Florida, N.A., 675 So.2d 186 (Fla. 4th DCA 1996). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. The certified conflict involves the issue of standing to participate in guardianship proceedings. For the reasons that follow, we hold that a person, including an heir of a ward, has standing to participate in a guardianship proceeding if the applicable provisions of either the Florida Guardianship Law or the Florida Probate Rules entitle the person to notice of the proceeding or authorize the person to file an objection in the proceeding. Applying this holding to guardianship proceedings concerning attorney's fees under section 744.108, Florida Statutes (2006), we conclude that, in addition to the attorney making the fee request, only the guardian, the ward, and those "interested persons" who have requested notice under Florida Probate Rule 5.060 have standing to participate in the proceedings.

FACTS AND PROCEDURAL HISTORY
This case concerns the guardianship of Mae E. Thompson, now deceased. Thompson lived with her nephew, William F. Hayes, III, who, along with Thompson's sister, Vivian Hayes, and brother-in-law, William F. Hayes, Jr., are the petitioners in this case. In February 2003, the Department of Children and Families (DCF) filed a petition under the Adult Protective Services Act, sections 415.101-415.113, Florida Statutes (2002), to have Thompson, who was then eighty-one years of age, removed from her nephew's home because of poor living conditions. The circuit court granted the petition and ordered that Thompson receive protective services.[1] *501 The circuit court also adjudicated Thompson incapacitated,[2] and appointed a guardian and court monitor.[3]
In a subsequent comprehensive order, the circuit court agreed with DCF's initial assessment finding that Thompson was a victim of multiple abuses at the hands of her nephew and sister, who had been responsible for assisting Thompson with her medical and financial needs. The circuit court also specifically found that the living conditions at the nephew's home were deplorable and that Thompson was placed at risk of harm and danger by living there. The circuit court determined that Thompson had been "exploited by her sister, Vivian, and nephew Billy," that she could "be easily influenced," and that she had "poor insight and judgment regarding her finances." The court also concluded that Vivian was responsible for "gross misappropriations" from Thompson's financial account.
The guardianship proceedings involved significant financial issues, including the extent of the petitioners' mismanagement of Thompson's money and whether some of the funds frozen by the circuit court belonged to any of the petitioners individually. There were also several hearings involving the petitioners' violation of court orders.
During the guardianship, Thompson's counsel filed several petitions for attorney's fees pursuant to section 744.108. The petition for attorney's fees at issue in this case was sent to Thompson's guardian and the court-appointed monitor. Neither the guardian nor the monitor objected to the fee request. However, at the hearing on the petition, counsel for the petitioners objected to the petition for several reasons: that an accounting needed to be conducted before further fees could be disbursed;[4] that expert testimony on the amount of fees was required; and that a portion of the fees claimed was for work for which counsel had already received compensation. In response, Thompson's attorney asserted that the petitioners lacked standing to challenge the petition. The trial court agreed, but allowed the petitioners to explain their objections as a "friend of the court."
After hearing the petitioners' objections and finding that Thompson was solvent, the circuit court determined that this case involved exceptional circumstances and awarded attorney's fees in the amount of $3,071 for legal services rendered from January 8, 2004, through March 22, 2004. The circuit court determined that the attorney's fees were both reasonable and necessary.[5]
*502 The petitioners appealed the circuit court's order awarding Thompson's counsel $3,071 in attorney's fees. The Third District affirmed, concluding that petitioners lacked standing to challenge the award. The Third District cited its decision in McGinnis v. Kanevsky, 564 So.2d 1141 (Fla. 3d DCA 1990), and certified conflict with the Fourth District's decision in Bachinger. The Third District did not decide whether the fee award was proper.

ANALYSIS
Chapter 744, Florida Statutes, the Florida Guardianship Law, governs guardianship proceedings in this state. Section 744.108, which concerns guardian's and attorney's fees and expenses, states that "[a] guardian, or an attorney who has rendered services to the ward or to the guardian on the ward's behalf, is entitled to a reasonable fee for services rendered and reimbursement for costs incurred on behalf of the ward." § 744.108(1), Fla. Stat. The statute further provides that a "petition for fees or expenses may not be approved without prior notice to the guardian and to the ward, unless the ward is a minor or is totally incapacitated." § 744.108(6), Fla. Stat.
The issue in this case requires us to determine whether standing to participate in guardianship proceedings under this statute is limited to the guardian and the wardand their counsel in attorney's fees proceedingsor whether it also extends to other parties. We first review case law addressing standing in the context of different types of guardianship proceedings. We then set out the analysis that courts should undertake in making a determination on standing and explain why the summary approach adopted by the Third District in McGinnis is incomplete.
I. Case Law Addressing Standing in Guardianship Proceedings
In McGinnis, the issue was whether relatives of a deceased ward had standing as heirs of the ward's estate to challenge awards of guardian's fees that had previously been approved by the court under section 744.108 on the ground that the fees were excessive. See 564 So.2d at 1142. The Third District held that "guardianship fees, properly authorized by the probate court, may not be set aside after the ward's death merely because his heirs consider that the awards were too high." Id.
McGinnis construed a version of section 744.108 that provided:
A guardian of the person or of the property shall receive a reasonable fee for his services to be fixed by the court after such notice as the court shall require.
Id. at 1143 n. 7 (quoting § 744.108, Fla. Stat. (1981)). Based on this language, the Third District explained why the heirs of the ward's estate were not entitled to notice:
The lack of any requirement for further notice reflects the idea that, in the case of a guardianship, the ward and his estate are the only interested parties. Insofar as these interests may be contrary to those of the guardian seeking fees, they are represented and safeguarded by the probate court itself.
Id. The Third District noted that even under the "new and far broader guardianship law" enacted in 1989, heirs of a ward's estate are not within the class of persons "cognizably interested in the guardianship estate" because the statute provides notice to only the ward, guardian, and attorney. Id.
The Third District also rejected the argument that the heirs were entitled to revisit the issue of guardianship fees under *503 section 744.424(2), Florida Statutes (1987), which provided for objections to attorney's fees and guardianship expenses sought in annual and final returns unless previously allowed. McGinnis, 564 So.2d at 1143 & n. 8. The Court reached the same conclusion about Florida Rule of Probate and Guardianship Procedure 5.700(a) (1977), id. at 1143-44, which provided for objections to annual financial returns by "a person interested as creditor, or otherwise." Id. at 1144 (quoting rule 5.700(a) (1977)).[6] Because the heirs of the ward's estate were not entitled to notice under section 744.108 and were not authorized to file objections under section 744.424 or rule 5.700(a), the Third District ruled in McGinnis that the heirs lacked standing to challenge the previously awarded guardian's fees. 564 So.2d at 1144-45.
Finally, the Third District observed that in guardianship proceedings, "the court is concerned only with the welfare of the ward himself in the administration of what are, after all, only his funds." Id. at 1144. Heirs of a ward's estate "are only contingent or potential beneficiaries who cannot complain that any expenditures on behalf of the ward have diminished what they may eventually receive and thus are not interested parties in the administration of the guardianship." Id. The Third District expressed concern that allowing heirs standing to challenge an award of guardian's fees was akin to allowing heirs or devisees standing to challenge "the supposedly excessive spending habits of a competent person during his lifetime" or to seek a "pre- or post-mortem determination of the appropriate expenditures of the assets from the guardianship," which is "not the law." Id. at 1144 n. 9.
Bachinger, the conflict case, also involved whether heirs of a deceased ward had standing to participate in a guardianship proceeding. However, unlike the proceedings in McGinnis and Hayes, which involved guardian's and attorney's fees, respectively, Bachinger involved a proceeding on a petition for final discharge. See Bachinger, 675 So.2d at 186. The Third District in Hayes did not acknowledge that Bachinger involved a different proceeding when it certified conflict, but this distinction is significant.
When a guardian petitions for final discharge, the guardian must file a final report with the court, and the court shall approve the report
[i]f no objections are filed and if it appears that the guardian has made full and complete distribution to the person entitled and has otherwise faithfully discharged his or her duties. If objections are filed, the court shall conduct a hearing in the same manner as provided for a hearing on objections to annual guardianship reports.
§ 744.527(1), Fla. Stat. (2006). In determining whether the heirs had standing to object to the petition for final discharge, the Fourth District looked to Florida Probate Rule 5.700(a), which provides that the "ward, or any other interested person, may file an objection to any part of a guardianship report within the time provided by law." See Bachinger, 675 So.2d at 187.
Relying on the language of rule 5.700(a), which allows an "interested person" to file an objection to any part of a guardianship report, the Fourth District determined *504 that the heirs had standing to object to the petition for final discharge because they "alleged that, in addition to being heirs, they were relatives and were taking care of [the] decedent before she was declared incompetent." Bachinger, 675 So.2d at 188. The Fourth District stated that "[i]f they do not have a sufficient interest to question how [the ward's] funds were spent, there is probably no one who does." Id. The Fourth District considered the concerns expressed by the Third District in McGinnis about allowing heirs to object to funds being spent on the ward, but was "not persuaded that it follows that they should have no standing." Id. at 187. The Fourth District explained that it is not sufficient to rely on the court and the guardian to scrutinize expenditures made on behalf of the ward because, due to the ex parte nature of these types of proceedings, "it is highly unrealistic to assume" that they "would involve any high level of scrutiny." Id. Quoting Judge Sharp's observation in Sun Bank & Trust Co. v. Jones, 645 So.2d 1008, 1017 (Fla. 5th DCA 1994), the Fourth District added that "[c]ourts must scrupulously oversee the handling of the affairs of incompetent persons under their jurisdiction and err on the side of over-supervising rather than indifference." Bachinger, 675 So.2d at 188.
In Jones, on which the Fourth District relied, the Fifth District also considered both the applicable statutory law and the guardianship rules in deciding whether personal representatives of a deceased ward's estate had standing to object to a petition for final discharge and a petition for guardian's and attorney's fees. In that case, the guardian and the guardian's attorney sought fees for services performed on the ward's behalf that included substantial sums related to a "home plan." Jones, 645 So.2d at 1013. The ward's daughter-in-law, in her capacity as personal representative of the ward's estate, objected to the fees and asserted that they should not be awarded for services rendered in carrying out the "home plan" because the "home plan" was neither feasible nor in the best interest of the ward. See id. Sun Bank, which was the personal representative under a superseding will,[7] also objected to the fees and maintained that the "home plan" was excessive and unauthorized, created a conflict of interest between the guardian and the ward, and was not in the ward's best interest. See id. at 1014. The trial court refused to consider the merits of these objections, citing McGinnis as authority. See id.
On appeal, the Fifth District reversed and ruled that review of the personal representatives' objections to the "home plan" should not have been foreclosed and that Sun Bank was a proper party to raise these objections. See id. at 1017. The Fifth District observed that notice was not provided to the personal representatives as required by the applicable statute and rule of procedure. See id. Specifically, the Fifth District cited section 744.447(2), which requires that notice of a petition to perform any act that constitutes a conflict of interest between the guardian and the ward "be given to the ward, next of kin, if any, and to those interested persons who have filed requests for notices . . . as provided in the Florida Probate Rules." See *505 Jones, 645 So.2d at 1017. The court also cited Florida Probate Rule 5.630(b), which requires that notice of a petition to perform an act requiring court approval be provided to the ward, next of kin, and those persons who have filed requests for notices. See Jones, 645 So.2d at 1017.[8]
Because these notice requirements had not been followed and because the trial court had conducted most of the proceedings ex parte, the Fifth District concluded that a full hearing on the objections should be held. See 645 So.2d at 1017. The Fifth District distinguished McGinnis because "the thrust of the objections [in Jones] is not excessiveness [of the fees sought] but a direct conflict of interest between guardian and ward." Id. The court concluded that "[c]learly, only a person other than the guardian can protect the ward's interests in such a case." Id.
II. Determining Standing in Guardianship Proceedings
Standing is a legal concept that requires a would-be litigant to demonstrate that he or she reasonably expects to be affected by the outcome of the proceedings, either directly or indirectly. See generally Brown v. Firestone, 382 So.2d 654, 662 (Fla.1980) ("[T]his Court has long been committed to the rule that a party does not possess standing to sue unless he or she can demonstrate a direct and articulable stake in the outcome of a controversy."); Weiss v. Johansen, 898 So.2d 1009, 1011 (Fla. 4th DCA 2005) ("Standing depends on whether a party has a sufficient stake in a justiciable controversy, with a legally cognizable interest which would be affected by the outcome of the litigation."). Thus, standing to bring or participate in a particular legal proceeding often depends on the nature of the interest asserted.
In guardianship proceedings, the overwhelming public policy is the protection of the ward. See § 744.1012, Fla. Stat. (2006) (declaring that the purpose of the Florida Guardianship Law is "to promote the public welfare by establishing a system that permits incapacitated persons to participate as fully as possible in all decisions affecting them; that assists such persons in meeting the essential requirements for their physical health and safety, in protecting their rights, in managing their financial resources, and in developing or regaining their abilities to the maximum extent possible; and that accomplishes these objectives through providing, in each case, the form of assistance that least interferes with the legal capacity of a person to act in her or his own behalf"). Thus, unlike most other types of litigation, guardianship proceedings are not adversarial and are governed by a comprehensive statutory code and set of procedural rules dictating who should receive notice of a particular proceeding.
In deciding who has standing to participate in a guardianship proceeding, the Third, Fourth, and Fifth Districts all focused on whether the person asserting standing is entitled to notice of the proceeding or is expressly authorized to file an objection in the proceeding. Significantly, each of these courts reviewed both the statutory law and the Florida Probate Rules. These courts also evaluated the nature of the interest of the person asserting standing.
We agree that when deciding whether a person has standing to participate in a specific guardianship proceeding, the court should begin by considering both the provisions of the Florida Guardianship *506 Law and any pertinent Florida guardianship rules.[9] The guardianship statutes and rules complement one another. The guardianship statutes set out the substantive law in this area and the Florida Probate Rules set out "the procedure in all probate and guardianship proceedings." Fla. Prob. R. 5.010. If a party asserting standing is either entitled to notice or authorized to file an objection in the proceeding under either the statutory provisions or the rules, that party should have standing to participate in the proceeding. Otherwise, the right to receive notice or file an objection would be meaningless. Cf. Velez v. Miami-Dade County Police Dep't, 934 So.2d 1162, 1165 (Fla.2006) ("This combination of a requirement of notification of the right to the adversarial preliminary hearing and the right to request the hearing indicates that the Legislature intended that the `person entitled to notice' have an opportunity to participate in that hearing.").
Where either the Florida Guardianship Law or the Florida Probate Rules expressly require that a person receive notice, the purpose of the provision is to inform the person of the proceeding and give the person an opportunity to participate in the proceeding if he or she chooses. For example, a petition to determine incapacity under section 744.331, Florida Statutes (2006), requires notice of the filing of the petition to be served on the incapacitated person, the attorney for the incapacitated person, and all next of kin identified in the petition. Thus, we hold that if the person is entitled to notice or is authorized to file an objection under the Florida Guardianship Law or the Florida Probate Rules, that person has standing to participate in the guardianship proceeding.
III. Whether Heirs to a Ward's Estate Have Standing in a Proceeding Under Section 744.108, Florida Statutes (2006)
We must next determine whether, under the analysis set out above, heirs of a ward's estate have standing in a proceeding under section 744.108 to challenge a petition for guardian's or attorney's fees. Section 744.108(6) states that a "petition for fees or expenses may not be approved without prior notice to the guardian and to the ward, unless the ward is a minor or is totally incapacitated."
Unlike rule 5.700(a), which addresses objections to guardianship reports and allows "interested persons" to file an objection to any part of a guardianship report, there is no specific guardianship rule that provides for notice of, or objections to, petitions for guardian's or attorney's fees beyond what is provided in section 744.108. However, rule 5.060, which applies to all guardianship and probate proceedings in this state,[10] including proceedings under section 744.108, provides:
(a) Request. Any interested person who desires notice of proceedings in the estate of a decedent or ward may file a separate written request for notice of further proceedings, designating therein such person's residence and post office address. When such person's residence *507 or post office address changes, a new designation of such change shall be filed in the proceedings. A person filing such request, or address change, shall also deliver a copy thereof to the clerk, personal representative or guardian, noting on the original the fact of mailing.
(b) Notice and Copies. A party filing a request shall be served thereafter by the moving party with notice of further proceedings and with copies of subsequent pleadings and papers as long as the party is an interested person.

(Emphasis supplied.)
Thus, under rule 5.060, an "interested person" who files a request is entitled to notice of further proceedings and copies of all subsequent pleadings in the case. Although section 744.108 does not specifically require that an "interested person" receive notice, a person is nonetheless entitled to notice pursuant to rule 5.060 as long as the requirements of the rule have been satisfied and the trial court agrees that the person does in fact qualify as an "interested person."
The question is what are the criteria for determining who qualifies as an "interested person." Both the Florida Guardianship Law and the Florida Probate Rules specify that the term "interested person" is to be accorded the definition contained in chapters 731-735, Florida Statutes, known as the Florida Probate Code.[11] The Florida Probate Code defines the term "interested person" as
any person who may reasonably be expected to be affected by the outcome of the particular proceeding involved. In any proceeding affecting the estate or the rights of a beneficiary in the estate, the personal representative of the estate shall be deemed to be an interested person. In any proceeding affecting the expenses of the administration and obligations of the decedent's estate, or any claims described in s. 733.702(1), the trustee of a trust described in s. 733.707(3) is an interested person in the administration of the grantor's estate. The term does not include a beneficiary who has received complete distribution. The meaning, as it relates to particular persons, may vary from time to time and must be determined according to the particular purpose of, and matter involved in, any proceedings.
§ 731.201(21), Fla. Stat. (2006).
Thus, unlike a ward, a guardian, or next of kin, who are specific persons occupying finite, statutorily defined roles,[12] the definition of "interested person" requires the trial court to evaluate the nature of both the proceeding and the interest asserted. In defining an "interested person" as any person "who may reasonably be expected to be affected by the outcome of the proceeding," section 731.201(21) incorporates *508 the general standing principles referred to above. And because the question of who is an "interested person" may vary as the circumstances of the guardianship change, we cannot provide strict guidelines for the lower courts to follow in deciding whether a party who receives notice of a petition for attorney's fees pursuant to a request made under rule 5.060 is a "person who may reasonably be expected to be affected by the outcome of the . . . proceeding." § 731.201(21), Fla. Stat.
Although we cannot provide specific criteria, we reject the bright-line rule adopted by the Third District in McGinnis that precludes an heir from participating in a proceeding for guardian's or attorney's fees. Implicit in the Third District's reasoning is that heirs of a ward should never be afforded standing to participate in proceedings for guardian's or attorney's fees because there are sufficient built-in procedural safeguards to protect the interests of the ward:
[J]ust as it is obviously for the competent person to spend or misspend his assets as he pleases, so it is up to the guardianship estate, regulated by the guardian and the court, to do the same without the interference or concern with the totally non-altruistic wishes of the ward's relatives or legatees.
564 So.2d at 1144 n. 9 (emphasis supplied).
We disagree. As the Fourth and Fifth Districts recognized in Bachinger and Jones, "[c]ourts must scrupulously oversee the handling of the affairs of incompetent persons under their jurisdiction and err on the side of over-supervising rather than indifference." Bachinger, 675 So.2d at 188 (quoting Jones, 645 So.2d at 1017). Moreover, although courts must approve petitions for guardian's and attorney's fees, "it is highly unrealistic to assume that such an ex parte procedure would involve any high level of scrutiny." Bachinger, 675 So.2d at 187. Thus, depending on the circumstances of the case and the specific issues involved, heirs of a ward may be considered "interested persons" for the purpose of participating in a guardianship proceeding, including a proceeding for guardian's or attorney's fees. See, e.g., Bachinger, 675 So.2d at 188 (beneficiaries under the ward's will, who cared for her before she became incompetent, were interested persons for the purpose of filing objections to guardian's petition for final discharge).
IV. This Case
In this case, the Third District determined that the petitioners lacked standing to object to the award of attorney's fees under section 744.108 based on McGinnis. Although we disagree with the bright-line rule adopted by the Third District in McGinnis and relied on in this case, we agree with the affirmance of the trial court's order.
Our review of the record reveals that the petitioners never made a request for notice under rule 5.060 as interested persons.[13] Further, their involvement in guardianship proceedings that were necessitated by their own mistreatment of the ward and misappropriation of her funds does not entitle them to participate in proceedings involving requests for attorney's *509 fees by the ward's attorney. The fact that they may have received a courtesy copy of some of the prior petitions does not in itself confer standing on them to participate in the subsequent proceeding. Because the petitioners were not entitled to receive notice of the attorney's fees proceeding under either section 744.108 or rule 5.060, they did not have standing to participate in that proceeding.
We also note that although the petitioners assert in their brief that future attorney's fees may eventually exceed $150,000, which is apparently more than the amount of the ward's estate, this case defies generalizations about how a ward's relatives are the persons most interested in ensuring that a ward's funds are properly spent. Given the findings of the trial court that attribute the need for the guardianship directly to the petitioners, it would appear inescapable that the fees they now claim are excessive came as a result of their own misconduct. Petitioners' concern about potentially excessive fees sounds a bit like the apocryphal story of the man who kills both his parents and begs the court for mercy because he is an orphan.[14] Moreover, the attorney's fees proceeding is not the appropriate forum in which to address the petitioners' assertion that there are outstanding issues regarding the trial court's initial findings on how much of the commingled funds belong to the ward.

CONCLUSION
Although the order that is the subject of this controversy involves only $3000, the principle is important. There must be a balance between ensuring that petitions for attorney's fees are carefully scrutinized and ensuring that these petitions are not subject to endless challenges by those whose only interest is to maximize their potential inheritance.
Accordingly, we conclude that in determining whether a person has standing in a guardianship proceeding, courts must consider the applicable provisions of both the Florida Guardianship Law and the Florida Probate Rules. Specifically, courts should look to whether either the statutory law or the rules entitle the person to notice of the proceeding or authorize the person to file an objection in the proceeding. If the person is entitled to notice or is authorized to file an objection, that person has standing to participate in the guardianship proceeding.
We hold that in guardianship proceedings concerning attorney's fees under section 744.108, the only persons entitled to standing are the attorney making the fee request, the guardian, the ward, and those "interested persons" who have filed written requests for notice under Florida Probate Rule 5.060. We disapprove the reasoning in Hayes based on its complete reliance on McGinnis and disapprove McGinnis to the extent that it suggests that heirs of a ward can never have standing to participate in proceedings for fees under section 744.108. However, we approve the result in Hayes, which denies the petitioners standing to participate in the attorney's fees proceeding at issue in this case. Although Bachinger involved a petition for final discharge, we approve the Fourth District's decision, which recognizes that heirs of a ward may have standing to participate in guardianship proceedings as "interested persons."
It is so ordered.
*510 LEWIS, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Specifically, the circuit court ordered that DCF place Thompson in an appropriate facility, apply for eligible financial benefits on behalf of Thompson, secure available medical and legal services, assist in obtaining in-home services as necessary, provide casework for the purpose of planning and providing needed services, provide for medical and psychiatric examinations if needed, and file a petition to determine capacity and to appoint a guardian.
[2] Section 744.102(12), Florida Statutes (2006), defines an "incapacitated person" as "a person who has been judicially determined to lack the capacity to manage at least some of the property or to meet at least some of the essential health and safety requirements of such person."
[3] The circuit court was authorized to appoint a monitor under section 744.107, Florida Statutes (2006). This section provides that "[t]he monitor may investigate, seek information, examine documents, or interview the ward, and shall report to the court his or her findings." § 744.107(2), Fla. Stat. (2006).
[4] Apparently, the issue of an accounting was not finally resolved at the time of the subject order regarding attorney's fees.
[5] Counsel for Thompson's guardian also filed a petition for attorney's fees pursuant to section 744.108, which was considered in the same hearing. The circuit court postponed awarding fees to counsel for Thompson's guardian until counsel could analyze any issues of duplication of attorney work. The circuit court's ruling regarding the attorney's fees sought by counsel for Thompson's guardian is not at issue in our review of this case.
[6] Section 744.424 was repealed in 1989. See ch. 89-96, § 68, Laws of Fla. In 1991, rule 5.700(a) was amended to conform to statutory requirements. See In re Amendments to the Fla. Probate Rules, 584 So.2d 964, 990 (Fla. 1991). Rule 5.700(a) now provides that "[t]he ward, or any other interested person, may file an objection to any part of a guardianship report within the time provided by law."
[7] In his first will, the ward appointed his daughter-in-law as the personal representative of his estate and she took actions with respect to the estate's assets in this capacity. See 645 So.2d at 1014. However, it was subsequently discovered that the will appointing the daughter-in-law as personal representative had been superseded by another will that named Sun Bank and Trust Company (Sun Bank) as the personal representative of the ward's estate. See id.
[8] No notice is required when the petition is "to authorize sale of perishable personal property or of property rapidly deteriorating." Fla. Prob. R. 5.630(b).
[9] Although officially referred to as the Florida Probate Rules, Parts I and III apply to guardianship proceedings. See Fla. Prob. R. 5.010.
[10] See Fla. Prob. R. 5.010 ("These rules govern the procedure in all probate and guardianship proceedings and shall be known as the Florida Probate Rules and may be cited as Fla. Prob. R. Part I applies to all proceedings. Part II applies to probate alone, Part III applies to guardianship alone, and Part IV applies to expedited judicial intervention concerning medical treatment procedures. The Florida Rules of Civil Procedure apply only as provided herein.") (emphasis supplied).
[11] See § 744.1025, Fla. Stat. (2006) ("The definitions contained in the Florida Probate Code shall be applicable to the Florida Guardianship Law, unless the context requires otherwise, insofar as such definitions do not conflict with definitions contained in this law."); Fla. Prob. R. 5.015(a) ("The definitions . . . stated or referred to in . . . Chapters 731, 732, 733, 734, 735, 737, 738, and 744, Florida Statutes, as amended from time to time, shall apply to these rules, unless otherwise defined in these rules.").
[12] See § 744.102(9), Fla. Stat. (2006) (defining "guardian" as "a person who has been appointed by the court to act on behalf of a ward's person or property, or both"); § 744.102(14), Fla. Stat. (2006) (defining "next of kin" as "those persons who would be heirs at law of the ward or alleged incapacitated person if the person were deceased and includes the lineal descendants of the ward or alleged incapacitated person"); § 744.102(22), Fla. Stat. (2006) (defining "ward" as "a person for whom a guardian has been appointed").
[13] The petitioners assert that they filed a motion requesting notice and copies of all pleadings. However, a review of the motion cited reveals that this was a motion for sanctions that alleged that the guardian's attorney failed to provide the petitioners with a courtesy copy of a proposed order. The motion did ask the trial court to issue an order "admonishing" that all proposed orders and communications with the court be provided to the petitioners. However, the petitioners never made a formal request for notice of further proceedings under the rules, and the trial court denied the motion for sanctions.
[14] See Alex Kozinski & Eugene Vokokh, Lawsuit, Shmawsuit, 103 Yale L.J. 463, 467 (1993) ("The most famous definition of `chutzpah' is, of course, itself law-themed: chutzpah is when a man kills both his parents and begs the court for mercy because he's an orphan.").