DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LOIS ZELMAN,**
Appellant,

v.

**MARTIN ZELMAN, ROBERT ZELMAN,** individually and as co-guardian of the property of Martin Zelman, **LISA HELD,** individually and as limited guardian of the person of Martin Zelman, and **CURTIS ROGERS,** as co-guardian of the property of Martin Zelman,
Appellees.

Nos. 4D14-1851
and 4D14-1887

[September 2, 2015]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Diana Lewis, Judge; L.T. Case Nos. 502014GA000107XXXXMB and 502014MH00455XXXXNB.

Philip M. Burlington and Nichole J. Segal of Burlington & Rockenbach, P.A., and J. Grier Pressly III of Pressly & Pressly, P.A., West Palm Beach, for appellant.

Matthew Triggs and Jessica Zietz of Proskauer Rose, LLP, Boca Raton, and Patricia K. Allen of Patricia K. Allen, P.A., West Palm Beach, for appellee, Martin Zelman.

Jane Kreusler-Walsh and Rebecca Mercier Vargas of Kreusler-Walsh, Compiani & Vargas, P.A., West Palm Beach, Peter A. Sachs of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, and Michael W. Connors of Michael W. Connors, P.A., North Palm Beach, for appellees, Robert Zelman, individually and as co-guardian of the property of Martin Zelman, Lisa Held, individually, and as limited guardian of the person of Martin Zelman, and Curtis Rogers, as co-guardian of the property of Martin Zelman.

GROSS, J.

In a guardianship proceeding, the denial of due process to the wife of the proposed ward requires reversal of an order determining incapacity and orders appointing limited guardians of person and property.

## *Factual Background*

On March 17, 2014, appellee Robert Zelman filed petitions with the probate court relating to the alleged incapacity of his 85-year-old father, Martin. Among these petitions were (1) a petition to determine Martin's incapacity and (2) a petition for appointment of a plenary guardian for Martin's person and property. Each petition listed Martin's "next of kin" as including his three children—Robert, Lisa Held, and Pamela Sonnenblick—and Martin's wife of thirteen years, appellant Lois Zelman. Each petition also contained unsavory allegations about Lois.

The petition to determine incapacity asserted Martin was incapacitated due to "dementia, confusion and [serious short term] memory loss." Both petitions cited concrete examples of Martin's incapacity. The petition accused Lois of trying to control Martin and his assets through mental abuse, neglect, and isolating him from his children. As a result, the petitions alleged that Martin was in need of a *plenary* guardian. Due to his long-time working relationship with his father, Robert proposed himself as guardian of Martin's person and property. Alternatively, Robert suggested the appointment of his sister, Lisa; Martin's long-time accountant; or a professional guardian.

After the appointment of emergency temporary guardians of person and property, Martin's granddaughter testified at a status conference that Lois had manipulated Martin into signing a durable power of attorney, a healthcare proxy, and other documents that favored Lois. Lois briefly denied these claims and said that she and Martin had a loving relationship. The trial judge expressed her belief that Martin was "a vulnerable adult [who] is being preyed upon," but declined to separate the couple "unless there's imminent danger."

## *The Guardian's Injunction*

The day after the status conference, Martin's guardian of person moved for an emergency temporary injunction requiring Lois to vacate Martin's apartment. The motion alleged that "Lois ha[d] continued to harass, manipulate and unduly influence" Martin. Affidavits from Martin's accountant and the manager of Martin's real estate properties supported the motion. Lois responded with affidavits and witnesses who explained that she and Martin were happily married and supportive of each other.

Following a hearing, the trial judge ruled that, for Martin's safety, it would be best if Martin and Lois were separated. Pursuant to the order, Lois moved into another unit she owned in the same condominium complex.

### *The Incapacity and Guardian Appointment Hearings*

With the appointment of emergency temporary guardians, the next stage in the guardianship proceeding was to determine whether Martin was incapacitated and, if so, to identify an appropriate level of guardian assistance. Lois filed an answer and affirmative defenses to Robert's initial petitions and a counter-petition for appointment of a plenary guardian. In her answer, Lois denied that Martin was incapacitated and asserted that there were alternatives to guardianship such as a durable power of attorney, the designation of a health care surrogate, and twenty-four hour caregivers. If, however, the trial court were to find Martin incapacitated and in need of a guardian, Lois contended that she—rather than Martin's children—should be his limited or plenary guardian. The trial court ultimately set the incapacity and guardianship determination for an April 21, 2014 hearing.

In the interim, Lois discharged her counsel and hired J. Grier Pressly III. At an April 15 hearing, Pressly moved for a continuance on the belief "there [we]re external forces at work pushing for divorce." Pressly also averred he needed more time to prepare witnesses, as he was new to the case. Martin's court-appointed attorney opposed the continuance and insisted that Martin was not waiving his right to a hearing within 14 days of the filing of his capacity evaluations. The trial court denied the continuance.

Two days before the April 21 hearing, Lois filed an amended answer, affirmative defenses, and counter-petition for appointment of plenary guardian. The main differences between this pleading and her previous one were that Lois now agreed that Martin was incapacitated and she sought the appointment of a neutral guardian, rather than herself.

The next day, Martin's counsel filed a motion to strike Lois's amended pleading as untimely filed. One of this lawyer's assertions was that although Lois was an interested person, she was not a party to the incapacity or the appointment of guardian proceedings. The lawyer contended that she, as Martin's attorney, and Robert were the only proper parties; she argued that Lois's participation was limited to being present and testifying.

- 3 -

At the outset of the incapacity hearing, Martin's counsel reminded the court of the motion to strike Lois's amended pleading. She argued there were "only two real parties" to the proceeding—Robert, the petitioner, and Martin, the alleged incapacitated person. The trial court told everyone to consider the amended pleading "stricken" such that they would proceed solely on Robert's petition. The court apparently ignored Lois's original pleadings.

*Martin's Incapacitation*

The parties stipulated to the admission of the three-member examining committee's reports on Martin's capacity. The reports conflicted. One doctor found a mild cognitive impairment and that Martin exhibited a "significant risk of being financially taken advantage of by others." She recommended a limited guardianship. A second doctor found no incapacity at all. The third member of the committee found Martin to be incapacitated to the point that he needed a plenary guardian.

At the hearing, Lois's counsel, Pressly, asked if he could call one of the doctors as a witness to further examine her recommendation. The trial court denied the request, stating Pressly would not be calling any witnesses.

To resolve the examining committee's impasse, Martin's attorney asked a fourth expert, Dr. Stephen Alexander, to provide an opinion. Dr. Alexander met with Martin twice. At the first meeting, Martin appeared totally incapacitated and confused, attributable, in Dr. Alexander's opinion, to the disruption, confusion, and stress caused by his wife's recent exodus from his residence.

Martin demonstrated a significant lack of memory regarding simple facts, such as his age, his birthdate, and even Lois's name. At times during the meeting, Martin became agitated and confused and "[h]is performance . . . deteriorate[d] rapidly" to the point he would "start[] to give . . . wildly incorrect information." For this reason, Dr. Alexander did not believe Martin was competent to sue or be sued, to enter into contracts, or retain any of his rights.

By contrast, two weeks later at the second meeting, Martin was "substantially improved, appearing calm and capable of handling himself." Dr. Alexander credited Martin's improvement to "continuity" and "stability" in that the disruption caused by Lois's ouster had subsided and Martin was comfortable in his current settings. By the second meeting, Martin did not appear to be incapacitated, providing the doctor insight as to why

the three-member committee reports were so different. Because Martin's swings in capacity left him susceptible to manipulation, Dr. Alexander recommended some type of limited guardianship. Dr. Alexander would not trust Martin, while in his confused state, to make important financial decisions, to read and analyze a legal contract, or to strategize with his lawyers in any litigation.

*Guardian Appointment Hearing*

The bulk of the hearing pertained to who should be appointed guardian. In this context, Lisa Held testified regarding her qualifications to continue serving as Martin's guardian of person. On cross-examination, Lois's counsel began asking questions outside the scope of direct relating to Martin's marital residences. When Robert's counsel objected, Lois's counsel informed the court that if scope was an issue he would "just call [Lisa] as part of [his] case." Martin's counsel responded that Lois "doesn't have a case" and that her counsel was "not going to be calling witnesses." The trial court did not immediately rule on the objection, but told Lois's counsel to "speed it up."

Along similar lines, Robert explained to the judge why he was qualified to be guardian of property. Robert also testified that Martin has confided in him that he wants to divorce Lois, leading Robert to believe Martin could not be protected from Lois if she remains his wife. For this reason, Robert was in favor of Martin divorcing Lois. During cross-examination, Lois's counsel wished to extract testimony in rebuttal, but the trial court stopped him, saying "There is no rebuttal by you."

*The Potential Divorce*

Much of the hearing focused on the practical ramifications of a Martin/Lois divorce. Robert called attorney David Pratt to testify about Martin's finances. Martin's attorney questioned Pratt regarding the contents of Martin and Lois's "heavily negotiated" amended prenuptial agreement, inquiring specifically about "what the financial outcome would be if Martin . . . died remaining married to Lois and if Martin . . . was able to file for dissolution."

Pratt's testimony had nothing to do with Martin's incapacity and everything to do about Martin's money and how a divorce would impact who would get the money upon Martin's death. The short and fast is that if Martin died married to Lois, she would receive $6 million. If Martin and Lois divorced, the money would elude her grasp. However, a dissolution brought by a guardian, and not Martin himself, would not count as a

"divorce," so Lois would retain the right to the funds upon Martin's death. Essentially, a separation of Lois from Martin's money required Martin himself—and not his guardian—to bring a dissolution action.

Following this testimony, Lois's counsel attempted to introduce exhibits through Pratt. The trial judge prevented him from introducing evidence, since Lois was merely an "interested person" and not a party.

Martin's counsel called Dr. Alexander who testified that Martin understood the "concept of divorce and wanted to get a divorce." In response to an objection, Martin's counsel sought to navigate a path through the guardianship that would sink any claim Lois might have to Martin's money. In closing, Martin's counsel argued that it would be inequitable not to preserve Martin's right to contract, to sue and be sued, "at least to the extent of being able to initiate a dissolution action," to keep Martin from "substantial [financial] harm," from "prenuptial and postnuptial agreements [which] do not consider a dissolution proceeding a termination under the document if initiated by a guardian."

### The Trial Court's Ruling

The trial court ordered a limited guardianship, removing Martin's rights to marry, apply for government benefits, have a driver's license, work, and manage or gift property. Martin retained his rights to vote, contract, and sue and defend lawsuits. The Court appointed Lisa to serve as the guardian of Martin's person and Robert and a professional guardian to serve as co-guardians of Martin's property. The trial court later ordered that $3 million be removed from a marital account and returned to Martin's revocable trust. We reversed that order in *Zelman v. Zelman*, 40 Fla. L. Weekly D1544 (Fla. 4th DCA July 1, 2015).

### The violation of Lois's due process rights was fundamental error that requires new guardianship hearings

Though bifurcated in the briefs, the main issue on appeal boils down to whether the trial court erred in determining that, as an "interested person," Lois lacked standing to call witnesses and present evidence; and, if so, whether such infringement violated her due process right to be heard. Lois asserts that, as Martin's spouse, due process required that she had the right to participate fully in the guardianship proceeding. Robert responds that as an "interested person," Lois received all the process to which she was entitled.

In general, "[p]rocedural due process serves as a vehicle to ensure fair treatment through the proper administration of justice where substantive rights are at issue." *Dep't of Law Enforcement v. Real Prop.*, 588 So. 2d 957, 960 (Fla. 1991). As we explained in a recent opinion involving the same parties:

> "[T]he constitutional guarantee of due process requires that each litigant be given a full and fair opportunity to be heard." *Vollmer v. Key Dev. Props., Inc.*, 966 So. 2d 1022, 1027 (Fla. 2d DCA 2007) (citations omitted). At its core, due process envisions "a law that hears before it condemns, proceeds upon inquiry, and renders judgment only after proper consideration of issues advanced by adversarial parties." *Scull v. State*, 569 So. 2d 1251, 1252 (Fla. 1990) (citing *State ex. rel. Munch v. Davis*, 196 So. 491, 494 (Fla. 1940)).

*Zelman*, 40 Fla. L. Weekly at D1545.

"When a court fails to give one party the opportunity to present witnesses or testify on his or her own behalf, the court has violated that party's fundamental right to procedural due process." *Douglas v. Johnson*, 65 So. 3d 605, 607 (Fla. 2d DCA 2011); *see also Sanchez v. City of W. Palm Beach*, 149 So. 3d 92, 97 (Fla. 4th DCA 2014) ("'Due process requires that a party be given the opportunity to be heard and to testify and call witnesses on his behalf . . . , and the denial of this right is fundamental error.'" (quoting *Pope v. Pope*, 901 So. 2d 352, 353 (Fla. 1st DCA 2005)).

The question here is whether an "interested person" in this guardianship case is entitled to the same level of due process that the law allows a "party" to a lawsuit. Guardianship law has incorporated traditional notions of standing that require a direct and articulable stake in a controversy that would be affected by the outcome of litigation. "[G]uardianship proceedings must comport with constitutional notions of substantial justice and fair play." *In re Guardianship of King*, 862 So. 2d 869, 871 (Fla. 2d DCA 2003) (quoting Joan L. O'Sullivan, "Role of the Attorney for the Alleged Incapacitated Person," 31 Stetson L.Rev. 687, 702, 706 (2002)). In the guardianship setting, a person's standing to "participate" in a proceeding depends on whether he or she qualifies as an "interested person." *See In re Guardianship of Trost*, 100 So. 3d 1205, 1210 (Fla. 2d DCA 2012). Stated generally, "[s]tanding depends on whether a party has a sufficient stake in a justiciable controversy, with a legally cognizable interest which would be affected by the outcome of the litigation." *Weiss v. Johansen*, 898 So. 2d 1009, 1011 (Fla. 4th DCA 2005).

The Supreme Court has characterized standing to sue as a "direct and articulable stake in the outcome of a controversy." *Brown v. Firestone*, 382 So. 2d 654, 662 (Fla. 1980). By statutorily defining an "interested person" as including any person "who may reasonably be expected to be affected by the outcome of the proceeding," the Florida Probate Code, through section 731.201(21), Florida Statutes (2014), sought to "incorporate[] the general standing principles." *Hayes v. Guardianship of Thompson*, 952 So. 2d 498, 507-08 (Fla. 2006).

Here, Lois was an interested person entitled to notice. A person is "interested"—and thus has standing to participate in a specific guardianship proceeding—where he or she is entitled to notice of the proceeding or is authorized to file an objection. *See id.* As next of kin, Lois was "entitled to notice of the petition to determine incapacity and to appoint a guardian." *Bivins v. Rogers*, 147 So. 3d 549, 550 (Fla. 4th DCA 2014) (citing §§ 744.102(14), 744.331(1), 744.3371(1), Fla. Stat. (2012)). Therefore, she had standing to "participate" in the underlying hearings. *See Hayes*, 952 So. 2d at 506.

And where a person has both standing and notice, a right to due process is triggered to insure that participation is meaningful. Indeed, "[t]he right to due process of law must be respected in guardianship proceedings." *Shappell v. Guardianship of Naybar*, 876 So. 2d 690, 691 (Fla. 2d DCA 2004). As our Supreme Court has explained:

> In observing due process of law, the opportunity to be heard must be full and fair, not merely colorable or illusive. Fair notice and a reasonable opportunity to be heard shall be given interested parties before a judgment or decree is rendered. Due process of law means a course of legal proceedings according to those rules and principles which have been established in our system of jurisprudence for the protection and enforcement of private rights.

*Ryan's Furniture Exch. v. McNair*, 162 So. 483, 487 (Fla. 1935) (internal citations omitted).

The level of participation necessary to satisfy due process in this case turns on the extent of Lois's interest in the outcome of the proceedings. Her interest here was extensive. The Zelman family sought relief within the guardianship that directly impacted Lois's marriage, the marital home, and her finances. Martin's lawyer plainly argued for the trial judge to craft an order designed to minimize Lois's financial position. Also, as Martin's wife, she was entitled to be heard in the guardianship hearing on the issue

of what was in his best interest. *Cf. In re Ray*, 109 N.W. 496, 497 (Neb. 1906) ("It would be an absurdity to say that the next of kin have no interest in the proceedings and that they should be denied the privilege of appearing on behalf of their kindred. Ray's children were heirs apparent, and as such had an interest which would entitle them to appear and be heard.").

For these reasons, Lois should have been permitted to fully participate in the guardianship proceeding—to call witnesses, cross-examine witnesses, testify, and make argument to the court. "The right to be heard at an evidentiary hearing includes more than simply being allowed to be present and to speak. Instead, the right to be heard includes the right to introduce evidence at a meaningful time and in a meaningful manner." *Vollmer v. Key Dev. Props., Inc.*, 966 So. 2d 1022, 1027 (Fla. 2d DCA 2007) (internal citations and quotations omitted); *see also Begens v. Begens*, 617 So. 2d 360, 361 (Fla. 4th DCA 1993) ("An opportunity to be heard includes the right to present evidence bearing on the issues."); *Pettry v. Pettry*, 706 So. 2d 107, 108 (Fla. 5th DCA 1998) ("Due process requires that a party be given the opportunity to be heard and to testify and call witnesses on his behalf, and the denial of this right is fundamental error." (internal citation omitted)).

As Lois points out, a contrary view poses an important question: why should Robert have a greater opportunity to be heard over other kin by virtue of his status as petitioner? A privileged status as a "party" in a guardianship should not be determined by a race to the courthouse. The whole purpose of a guardianship proceeding is to protect the ward's interests. *See Romano v. Olshen*, 153 So. 3d 912, 917-18 (Fla. 4th DCA 2014).

"Next of kin" and "interested persons" are permitted to participate in incapacity and appointment of guardian determinations because usually they are well situated to act in the ward's best interest. Often, family members are on the same side and they work together on the ward's behalf. But here, Lois and Robert had diametrically different views on what was in Martin's best interest, not unusual where the children of a first marriage have a pecuniary interest contrary to that of a spouse who came later. Through the guardianship proceedings, both sides should have been heard; but the trial judge's ruling gave Robert's side a decided advantage.

The due process infirmities here resulted in fundamental error. *See Weiser v. Weiser*, 132 So. 3d 309, 311 (Fla. 4th DCA 2014) ("The denial of due process rights, including the opportunity to be heard, to testify, and

to present evidence, is fundamental error."). Therefore, the underlying orders are reversed and the case is remanded for new hearings.

Because the original trial judge is no longer on the bench, the case will have to be retried before a new judge. We note that the judgment here was infected by legal hocus pocus, containing findings so unsupported by the record as to be clearly erroneous. Without delving into detail, the judgment found Martin not competent to marry—not a particularly high threshold—or to manage property or make gifts but determined that he was fully able to handle a lawsuit that involves complex financial issues. In the effort to navigate the legal implications of prenuptial agreements and, perhaps, section 61.052(1)(b), Florida Statutes (2014),[1] the focus of the hearing veered away from the best interest of the ward.

*Reversed and remanded.*

MAY, J., and HERSCH, RICHARD L., Associate Judge, concur.

*      *      *

**Not final until disposition of timely filed motion for rehearing.**

---

[1]Section 61.052(1)(b) provides that "no dissolution shall be allowed unless the party alleged to be incapacitated shall have been adjudged incapacitated according to the provisions of s. 744.331 for a preceding period of at least 3 years."