# Third District Court of Appeal

**State of Florida**

Opinion filed September 06, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1464
Lower Tribunal No. 14-4149
_____

**Antonio M. Hernandez, Sr.,**
Appellant,

vs.

**Eusebio G. Hernandez, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Bernard S. Shapiro, Judge.

Laura Bourne Burkhalter, PA, and Laura Bourne Burkhalter, for appellant.

Sloto & Diamond, PLLC, and James R. Sloto and Seth S. Diamond, for appellee.

Before ROTHENBERG, C.J., and SUAREZ and EMAS, JJ.

ROTHENBERG, C.J.

In this guardianship case, Antonio Hernandez, Sr. ("Antonio") appeals the probate court's order finding that Antonio lacks standing to object to several court orders authorizing payment of attorney's fees from his mother, Elena Hernandez's ("the Ward") assets. We have reviewed the probate court's determination of standing de novo, see Bivins v. Rogers, 147 So. 3d 549 (Fla. 4th DCA 2014), and affirm.

## BACKGROUND

The Ward is a widow with three adult children: the appellant, Antonio; the appellee, Eusebio G. Hernandez ("Eusebio"); and Elena Hernandez-Kucey ("Elena"). On October 17, 2014, Eusebio filed a petition for the appointment of a plenary guardian for his eighty-five-year-old mother. Thereafter, the probate court found that the Ward was totally incapacitated, and on December 16, 2014, the court appointed Eusebio as plenary guardian over the Ward and her property. The probate court's order delegated all of the Ward's delegable rights to Eusebio, including the right to sue and defend suits and the right to contract.

Thereafter, Eusebio filed petitions to engage litigation counsel to file (1) an ejectment action against Antonio; Antonio's wife, Leonor Robles Hernandez ("Leonor"); and their son, Antonio M. Hernandez, Jr. ("Antonio, Jr."); and (2) a lawsuit against Antonio, Leonor, and Antonio, Jr. for damages related to their alleged conspiracy to deprive the Ward of over $222,000, undue influence, and

2

abuse and neglect of a vulnerable adult. These petitions were granted, as was Eusebio's subsequent petition for authorization to file an adversary petition for damages and equitable relief based on the above grounds, which he claimed resulted in the dissipation of significant assets belonging to the Ward.

The adversary petition alleges that the Ward suffered a serious fall in November 2013 and subsequently suffered multiple urinary tract infections that further impaired her balance and cognition to the point where the Ward became completely incapable of taking care of herself. Although Eusebio and Elena wanted to place the Ward in an assisted living facility, where the Ward could receive round-the-clock care, Antonio objected and insisted that the Ward remain in her home with a caretaker hired by Antonio. The petition further alleges that the caretaker Antonio hired was unqualified and an alcoholic, and as a result of the caretaker's deficient care, the Ward was hospitalized six times between November 2013 and November 2014 from severe urinary tract infections, became wheelchair bound, and ultimately required total care. Eusebio claims in the petition that he found his mother several times sitting in a recliner in her home, covered in her own urine and feces. Upon being named guardian, Eusebio, with his sister Elena's consent, promptly moved the Ward into the Palace Renaissance ("the Palace"), an assisted living facility where the Ward has steadily improved both mentally and

physically. The Ward is now able to ambulate with the aid of a walker and has not required any further hospitalizations.

The adversary petition alleges that Antonio intentionally withheld proper medical care from the Ward in an effort to expedite her death and preserve the Ward's assets in order to ensure a larger inheritance by Antonio and Antonio's family. The petition alleges that Antonio, Leonor, and Antonio, Jr. conspired and acted in concert to allow the Ward's physical, medical, and psychological condition to deteriorate, not only to expedite the Ward's death, but also to enable them to exert undue influence over her and obtain dominion and control over her assets.

This conspiracy was allegedly mounted and executed due to Antonio and his family's financial difficulties. After enjoying a lifestyle of wealth, comfort, and luxury, Antonio and his family's various businesses and real estate investments began to fail in 2008. Beginning in 2009, eight separate foreclosure proceedings were initiated by various banks, resulting in numerous final judgments of foreclosure and deficiency judgments.[1] Leonor also unsuccessfully petitioned for relief in the United States Bankruptcy Court on August 24, 2011.

---

[1] (1) In case number 09-86047, a final judgment of foreclosure and a final deficiency judgment pertaining to property located at 8100 Harding Avenue, Miami Beach, Florida, were entered.
 (2) In case number 09-86038, foreclosure proceedings pertaining to property located at 1015 Palm Avenue, Hialeah, Florida, were initiated, which resulted in a writ of possession in favor of the bank.

4

The adversary petition alleges that based upon Antonio's financial difficulties, Antonio, Leonor, and Antonio, Jr. conspired together and used undue influence over the deteriorating, weakened, and dependent Ward, in order to convert the Ward's assets, which the Ward needed for her own care, to Antonio and his family's own use. Specifically, it is alleged that they were able to transfer $240,000.00 of the Ward's assets into a bank account jointly held by the Ward and Antonio, Jr., and then use $222,322.09 of the transferred funds to complete a cash purchase of real property located at 9128 S.W. 227 Lane, Miami, Florida, which was purchased in Leonor's name. Leonor and Antonio have lived at 9128 S.W. 227 Lane since the acquisition.

In addition to filing the adversary petition, Eusebio petitioned the probate court for authorization to sell the Ward's homestead property to help pay for the

---

(3) In case number 09-86054, a final judgment of foreclosure was entered on June 16, 2010 pertaining to property located at 420 78th Street, Miami Beach, Florida.

(4) In case number 09-86066, a final judgment of foreclosure was entered pertaining to property located at 6910-6920 Byron Avenue, Miami Beach, Florida, and a final deficiency judgment was entered against Antonio.

(5) In case number 09-13881, a final judgment of foreclosure was entered (no location was provided in the adversary petition).

(6) In case number 10-51107, a final judgment of foreclosure was entered on January 13, 2011, pertaining to property located at 7730-7740 Dickens Avenue, Miami Beach, Florida.

(7) In case number 10-61392, a final judgement of foreclosure was entered on September 27, 2011, pertaining to property located at 1224 Burlington Street, Opa Locka, Florida.

(8) In case number 11-19728, foreclosure proceedings were initiated against a Las Bellezas Condominium Unit, located in Hialeah, Florida.

Ward's healthcare, debts, and expenses. Although the Ward's health and mobility were improving since Eusebio had removed her to the Palace, Antonio, Leonor, and Antonio, Jr. objected to the Ward's residency and care at the Palace and the sale of the Ward's homestead to pay for her continued care at the Palace, and insisted that she be returned to her home. The appointment of counsel was necessitated by Antonio, Leonor, and Antonio, Jr.'s objection to the appointment of a guardian, the transfer of the Ward to the Palace, and the sale of the Ward's homestead to pay for her care. Counsel was also necessary to pursue the lawsuit filed by Eusebio against Antonio, Leonor, and Antonio, Jr. for civil conspiracy, conversion, undue influence, an equitable lien, a constructive trust, abuse and neglect of a vulnerable adult, and exploitation of a vulnerable adult.

As required by the probate court, Eusebio periodically petitioned the court for orders approving and granting reasonable fees for the services performed by the law firms for the benefit of the Ward. These petitions, which were filed by Eusebio with Elena's consent, were considered and ruled on by the probate court with no notice to Antonio. Antonio objected to these awards of attorney's fees and costs, and specifically those fees and costs incurred relevant to the adversary proceedings brought against him and his family, which Antonio argued were not for the benefit of the Ward and were excessive and unreasonable. Antonio moved

6

to vacate these awards based on Eusebio's failure to serve notice upon Antonio as an interested person and as the next of kin of the Ward.

The probate court denied Antonio's objection and motion to vacate the attorney's fees orders, finding that Antonio was not an "interested person" within the definition of section 731.201(23), Florida Statutes (2016), of the Florida Probate Code, and Hayes v. Guardianship of Thompson, 952 So. 2d 498 (Fla. 2006). Thus, as Antonio was not an "interested party," he was not entitled to receive notice regarding these attorney's fees petitions and therefore lacked standing to object. This appeal followed.

## ANALYSIS

Antonio contends that he had standing to move to vacate the probate court's orders granting attorney's fees and costs incurred in the guardianship proceedings, (which he claims were excessive, unreasonable, and entered without notice to him), because he is an "interested person." Antonio claims that he is an active participant in the guardianship proceedings and filed a request for copies under rule 5.060 of the Florida Probate Rules, and thus, he was entitled to notice and to object to the fees requested by Eusebio as the plenary guardian.

Our analysis is directed by Chapter 744 of the Florida Statutes, which governs guardianship proceedings, section 744.108, which governs guardian's and attorney's fees and expenses, and Hayes. Section 744.108 provides that "[a]

7

guardian, or an attorney who has rendered services to the ward or to the guardian on the ward's behalf, is entitled to a reasonable fee for services rendered and reimbursement for

costs incurred on behalf of the ward," § 744.108(1), Fla. Stat.(2016), and "[a] petition for fees or expenses may not be approved without prior notice to the guardian and to the ward, unless the ward is a minor or is totally incapacitated," § 744.108(b), Fla. Stat. (2016).

Because the guardianship statute only provides that notice be given to the guardian and the ward when approving petitions for fees and costs, the Florida Supreme Court in Hayes addressed whether standing to participate in guardianship proceedings under this statute is limited to the guardian and the ward or whether it extends to other parties. Hayes, 952 So. 2d at 502. The Hayes court noted that "standing to bring or participate in a particular legal proceeding often depends on the nature of the interest asserted," id. at 505, and that "[i]n guardianship proceedings, the overwhelming public policy is the protection of the ward." Id. (citing § 744.1012, Fla. Stat. (2006)). "Thus, unlike most other types of litigation, guardianship proceedings are not adversarial and are governed by a comprehensive statutory code and set of procedural rules dictating who should receive notice of a particular proceeding." Id. at 505.

8

Although section 744.108 does not specifically require that an "interested person" receive notice, Florida Probate Rule 5.060 requires notice to persons the trial court concludes is an "interested person" so long as the requirements of the rule have been satisfied. Hayes, 952 So. 2d at 507. Thus, the Court in Hayes considered who is an "interested person" in such proceedings. The Florida Supreme Court concluded that the determination of who is an interested person in a guardianship proceeding will "vary from time to time and must be determined according to the particular purpose of, and the matter involved in, any proceedings." Id. at 507 (citing § 731.201(21), Fla. Stat. (2006)).[2] Thus, "the definition of 'interested person' requires the trial court to evaluate the nature of both the proceeding and the interest asserted." Id.

Simply being next of kin does not confer "interested person" status. Rudolph v. Rosecan, 154 So. 3d 381, 385 (Fla. 4th DCA 2015). An "interested person" is "any person who may reasonably be expected to be affected by the outcome of the particular proceeding involved." § 731.201(23), Fla. Stat. (2016). For example, "[i]n any proceeding affecting the estate or the rights of a beneficiary in the estate, the personal representative of the estate shall be deemed to be an interested person." Id. "Thus, unlike a ward, a guardian, or next of kin, who are specific persons occupying finate, statutorily defined roles, the definition of

---

[2] The definition of "interested party" has since been renumbered to section 731.201(23).

"interested person" requires the trial court to evaluate the nature of both the proceeding and the interest asserted." Hayes, 952 So. 2d at 507 (footnote omitted).

Antonio contends that because he is an active participant in the guardianship proceedings and filed a notice and request for copies under rule 5.060, he is an interested party entitled to notice and with standing to object to the attorney's fees petitions. However, filing a notice and request for copies under rule 5.060 and being an active participant in the proceedings does not necessarily entitle Antonio to participate in the proceedings involving requests for attorneys fees by the Ward's attorney. See Hayes, 952 So. 2d at 508-09. That is because the court must still consider the nature of the proceedings.

Here, as in Hayes, Antonio's involvement in the guardianship proceedings was necessitated by his alleged mistreatment of the Ward and misappropriation of her funds and, thus, does not entitle him to participate in the attorney's fees proceedings brought by the Ward's guardian at the request of the Ward's attorney. See id. (holding that the petitioners' "involvement in the guardianship proceedings that were necessitated by their own mistreatment of the ward and misappropriation of her funds does not entitle them to participate in proceedings involving requests for attorney's fees by the ward's attorney").

> Given the findings of the trial court that attribute the need for the guardianship directly to the petitioners, it would appear inescapable that the fees they now claim are excessive came as a result of their own misconduct. Petitioners' concern about potentially excessive

10

> fees sounds a bit like the apocryphal story of the man who kills both his parents and begs the court for mercy because he is an orphan.

Id. at 509.

The probate court considered the nature of the proceedings before concluding that Antonio was not entitled to notice and lacked standing to object to the attorney's fees requests related to the guardianship that are the subject of this appeal. Those proceedings, which necessitated the appointment of an attorney to represent the Ward include: (1) Eusebio's and Elena's petition for the appointment of a plenary guardian, to which Antonio objected; (2) the appointment of Eusebio as guardian, to which Antonio objected; (3) the petition to sell the Ward's homestead in order to pay for the Ward's care and treatment at the Palace where the Ward has steadily improved since her transfer there by the guardian, to which Antonio also objected; and (4) the petition to file an adversary proceeding against Antonio, Leonor, and Antonio, Jr. for their alleged mistreatment of the Ward, undue influence over her, and misappropriation of her assets.

We, therefore, find no error in the probate court's determination that Antonio lacks standing to object to the attorney's fees requests pertaining to the services rendered as to these guardianship proceedings. As the Florida Supreme Court concluded in Hayes: "There must be a balance between ensuring that these petitions for attorney's fees are carefully scrutinized and ensuring that these

petitions are not subject to endless challenges by those whose only interest is to maximize their potential inheritance." Id. at 509.

Antonio has received notice and was afforded the opportunity to object and to participate in the guardianship proceedings relating to the appointment of a plenary guardian for the Ward, the appointment of Eusebio as the guardian, the sale of the Ward's homestead, the petition to initiate adversary proceedings against Antonio and his family's alleged mistreatment of and undue influence over the Ward. We conclude that the order finding that Antonio lacks standing to contest the attorney's fees, which were necessitated by Antonio's unsuccessful objections to these petitions, strikes the balance suggested by the Florida Supreme Court. It permits the probate court and the guardian to carefully scrutinize the fee requests but limits the "endless challenges by those whose only interest is to maximize their potential inheritance." Id. Accordingly, we affirm the order on appeal.

Affirmed.

SUAREZ, J., concurs.

EMAS, J., dissenting.

I respectfully dissent, because I conclude that Antonio M. Hernandez was an "interested person" within the meaning of section 731.201(23), Florida Statutes (2016) and Florida Probate Rule 5.060, and thus had standing to participate in the specific proceedings below which form the basis for this appeal. The parties to this appeal agree that our standard of review is de novo. See Rudolph v. Rosecan, 154 So. 3d 381 (Fla. 4th DCA 2014); Agee v. Brown, 73 So. 3d 882 (Fla. 4th DCA 2011); Wheeler v. Powers, 972 So. 2d 285 (Fla. 5th DCA 2008).

To provide proper context, it is important to note what is *not* at issue in this appeal. The question is not whether the trial court was correct in granting appellees' numerous petitions for orders approving attorney's fees; whether the trial court correctly authorized Eusebio to file an adversary petition against Antonio; or whether Antonio *in fact* engaged in the conduct alleged by Eusebio. The very narrow issue in this appeal is whether Antonio M. Hernandez was simply entitled to notice of, and an opportunity to be heard at, the proceedings held by the trial court regarding the petitions for attorney's fees and costs for services by attorneys handling the adversary petition on behalf of Eusebio.

13

The majority cites to the Florida Supreme Court's decision in <u>Hayes v. Guardianship of Thompson</u>, 952 So. 2d 498 (Fla. 2006). While I agree that the <u>Hayes</u> decision is helpful, it is not dispositive of the question presented here.

The linchpin of the majority's holding is found at *10 of its opinion:

> Here, as in <u>Hayes [v. G'ship of Thompson</u>, 952 So. 2d 498 (Fla. 2006)], Antonio's involvement in the guardianship proceedings was necessitated by his own alleged mistreatment of the Ward and misappropriation of her funds and thus does not entitle him to participate in the attorney's fees proceedings brought by the Ward's guardian at the request of the Ward's attorney.

But this conclusion puts the proverbial cart before the horse and ignores a singular and dispositive distinction between this case and <u>Hayes</u>: in the instant case, the three pages of the majority's opinion detailing the "allegations" in Eusebio's adversary petition are simply that—allegations. There has been no evidentiary hearing or other determination or finding of fact regarding those allegations.

By contrast, the trial court in <u>Hayes</u> had already determined this issue and made an actual ***finding*** of improper conduct and actions by the heirs. <u>See</u> <u>id.</u> at 509 (noting that petitioners were not entitled to notice and to participate in the proceedings "[g]iven the findings of the trial court that attribute the need for the guardianship directly to the petitioners . . . ."). In the instant case, we have only the allegations of Eusebio— allegations which continue to be denied and contested by Antonio. The majority, apparently satisfied with such, concludes in circular-

14

logic fashion that Antonio cannot be an interested person with standing to be heard on, or contest, the request for attorney's fees, because the fees requested were necessitated by Antonio's "*alleged* mistreatment of the Ward and misappropriation of funds." If at some point Eusebio's allegations are determined to be unfounded or not proven, will Antonio then be deemed (nunc pro tunc) an "interested person"? The answer to this question would appear to be obvious, but equally obvious is that this answer would come too late to provide meaningful relief.

I would hold that Antonio is an "interested person" because Antonio may reasonably be expected to be affected by the outcome of a proceeding which will result in the payment of nearly $100,000 from his mother's assets, an amount which exceeds the total value of the liquid assets of her estate.[3] Although being an heir, or next of kin, does not automatically confer "interested person" status, Rudolph, 154 So. 3d at 385, the Florida Supreme Court in Hayes acknowledged that "courts must scrupulously oversee the handling of the affairs of incompetent persons under their jurisdiction and err on the side of over-supervising rather than indifference." Hayes, 952 So. 2d at 508. I do not suggest that Antonio has any right to prevent the trial court from approving the requests for attorney's fees and costs. Nor do I suggest that the trial court is prevented from considering Antonio's possible motive, bias or interest in lodging any objections to the requests for

---

[3] In May of 2016, the guardian filed a 2015 annual guardianship accounting, listing the Ward's liquid assets, with a total value of $81,267.15.

attorney's fees and costs. I do suggest, however, that he is an interested person who has the right to receive notice of, and to be heard at, the proceedings at which the trial court is considering and ruling upon the requests.

I therefore respectfully dissent.